## W. T. SMITH ET AL. V. F. B. SUBLETT, ADMINISTRATOR, &C.

A defendant may plead as many inconsistent pleas as he may choose, provided they are pertinent and in due order of pleading; and an intervenor who is occupying the attitude of a defendant, and who is resisting a claim to his property asserted by a plaintiff, is entitled to the same latitude in his pleadings. (Paschal's Dig., Art. 1441, Note 548.)

When an authority in the nature of a personal trust is conferred, it does not impliedly invest the agent with the right of substitution, but is to be considered exclusively personal, unless by the language used, or by a fair presumption arising from the particular transaction or the usage of trade, a broader power be conferred upon the agent.

A contract between the owner of a land certificate and his agent, by which the agent is employed and empowered to locate the certificate, involves a personal confidence reposed in the agent, and does not, in the absence of an express power of substitution and of an established custom of the country, confer upon the agent the right to transfer the trust to another person.

A principal is not chargeable with notice of all acts done by his agent with reference to the subject-matter of the agency, but of such acts only as are within the scope of the authority conferred upon the agent. If an agent, without authority, assume to exercise a power of substitution, the principal is not chargeable with notice thereof.

The possession of a land certificate does not imply a power in the holder to employ another person to locate it. The title to such an instrument does not pass by delivery, and, if it have been assigned by the grantee, the presumption is, that it belongs to the assignee, and not to a third person in whose possession it may be.

The mere fact that a land certificate has not been assigned to the person having possession of it is of itself sufficient to put other persons on their guard in contracting with the holder to locate it for his benefit.

The act of receiving a patent from the general land office cannot be construed into a ratification by the party receiving it of an act of which he had no knowledge.

ERROR from Limestone. The case was tried before Hon. JOHN GREGG, one of the district judges.

This action was brought to the fall term, 1852, of the District Court of Limestone county, by David R. Mitchell, as administrator of Thomas J. Smith, deceased, to recover of George A. Sublett, who was a non-resident of the State, one-fourth of a league and labor of land located under the

head-right certificate of Willis M. Williams.  Mitchell died while the suit was pending, and the heirs of Smith, now plaintiffs in error, were admitted as plaintiffs below.  The interest claimed by the plaintiffs in their original and amended petitions was a "locative interest," acquired by their intestate and his representatives under a contract between him and George A. Sublett, dated January 27, 1847.

Pending the litigation, George A. Sublett, the original defendant, died, and though further proceedings were had against his representatives, no notice need be taken of them, as the suit took a different direction.

On the 15th of November, 1854, the defendant in error, Franklin B. Sublett, as the administrator of Philip A. Sublett, deceased, filed his petition of intervention, alleging that the whole of the league and labor in question was the property of the estate of said Philip A. Sublett, represented by this intervenor.  He filed with his petition a patent from the State for the land, issued to Philip A. Sublett on the 1st of June, 1849.  In his original petition the intervenor alleged that his intestate acquired the certificate from Williams by assignment, and employed George A. Sublett to locate it, and to survey and patent the land, agreeing to pay the said George A. Sublett, in money, the usual fees and charges for such services.  But on the 16th of May, 1855, the intervenor amended, and alleged that his intestate "employed the said George A. Sublett to locate a number of land certificates, and amongst others the said certificate of Willis M. Williams, as alleged in his original petition, for which he agreed to pay him one-half of the aggregate amount of all the lands so located.  Petitioner further states, that his said intestate, in the year 1849, paid said George A. Sublett in other lands for the location, &c., of the said Willis M. Williams' certificate."

The plaintiffs excepted for insufficiency to the petitions of the intervenor, but their exceptions were overruled,

and they took their bill of exceptions to the ruling of the court.

On the 11th of October, 1859, the plaintiffs amended, and alleged that their ancestor, Thomas J. Smith, and the said George A. Sublett entered into a written contract concerning the location of land certificates, and among others of the said certificate of Willis M. Williams, by which agreement the said Smith was to locate the certificate, and to receive for his services one-fourth of the land, Sublett to pay the surveying fees, and Smith all other expenses. That said Smith, and his administrator after his death, fully performed the agreement and made the location, but that the patent for the land was taken from the general land office without the knowledge or consent of the said Smith, his administrator, or these plaintiffs, by which means they were prevented from fulfilling so much of the contract as required them to obtain the patent. That the agreement and location were made in good faith, and without knowledge on the part of Smith or his representatives of any claim to the certificate by the intervenors or any one else; that George A. Sublett was wholly insolvent, and the only remedy of the plaintiffs is on the land. They tender the patent fees, and allege that George A. Sublett was lawfully possessed of the certificate by virtue of an agreement with Philip A. Sublett, and was therefore fully empowered to contract for its location; that at the time of the making of the contract by Smith and George A. Sublett, the latter was the agent of Philip A. Sublett, and that the intervenor is bound by the acts of said agent in the premises; that any settlement between George A. and Philip A. Sublett for the location of the certificate was made with a full knowledge of the prior claim of plaintiffs to the locative interest of one-fourth, and was in fraud of the plaintiffs.

On this state of the pleadings, the cause was submitted to the court without a jury, at the fall term, 1859.

The plaintiffs introduced the written contract between their ancestor Smith and George A. Sublett, of date January 26, 1847, and proved that Mitchell, the administrator of Smith, was along with the surveyors when the land was surveyed, claiming to be the locator, and seeming to be in control of the business; but whether he claimed as principal or as a substituted agent the witnesses could not say.

The intervenor introduced the patent issued to his intestate, Philip A. Sublett, as the assignee of Willis M. Williams. He also proved the contract between Philip A. and George A. Sublett, substantially as stated in his amended petition of intervention, and that a settlement of their matters respecting these locations was had between the two Subletts in 1849, by which George A. Sublett received compensation in other lands for locating the Williams certificate.

The court adjudged that the plaintiffs take nothing by their suit as against the intervenor, and decreed that the intervenor be quieted in his title and recover his cost. The plaintiffs gave notice of appeal, but brought up the case by writ of error, assigning for error the overruling of their exceptions to the petitions of the intervenor and the judgment rendered by the court.

*C. M. Winkler*, for the plaintiffs in error.—The first alleged error is in reference to the ruling of the court below on the exception of the plaintiffs to the petitions of the intervenors. I insist that the exception should have been sustained, because the petitions, taken together, are not only contradictory, but they show such authority and control of this certificate as made George A. Sublett the agent of Philip A. Sublett in the matter of its location, and do not negative the idea that payment was made in fraud of the rights of the locator. The judgment is erroneous, because George A. Sublett, in so far as the rights of the locator are concerned, stood in the relation of agent to

Philip A. Sublett; for, under the law, the facts create that relation, and the principal is affected with notice of his acts. There can be no controversy that Philip A. Sublett made George A. Sublett his agent for the location of this certificate in question. By placing the certificate in his hands, he, under an agreement for half the land to be held by it, clothed him with the means of imposing on other persons, and of creating a sub-agency in another. If the principal should clothe the agent with all the apparent muniments of title to the property in himself, the principal would be bound by the acts of the latter. (Story on Agency, § 443.)

A contract to locate for part of the land is not within the statute of frauds, and need not be in writing, (10 Tex., 340; Miller v. Roberts, 18 Tex., 16;) and I see no reason why an agency to contract for locating need be in writing; the bare possession of the certificate would give the possessor authority to contract for its location, in the absence of fraud or collusion. Again, the rights of third persons will be protected when they deal with an agent, supposing him to be the sole principal, without any knowledge that the property involved belongs to another person. (Story on Agency, § 444.)

So, if a contract be originally made without authority of the principal, he may, by a ratification of it, give it validity, so far as to confer upon the other contracting party the same rights and remedies as if he had personally made it. The general maxim is, that a subsequent ratification is equivalent to a prior authority. (Id., § 445.)

In this case the intervenor, by receiving the patent upon the location made by the plaintiff, under a contract with George A. Sublett, thereby ratified the contract, and made it as binding against him as if he had empowered an agent in the most solemn manner.

It may be contended, that the owner of the certificate, having contracted with and paid another for locating it, has thereby complied with his contract, and is therefore

not liable to the plaintiffs in error. But if the relation of principal and agent is to be inferred from the circumstances of this case, then such a position cannot avail the defendant in error; and if he has paid, he did so at his peril, for the reason that he was affected with notice of the facts within the knowledge of his agent, and that agent, having bound himself to pay to another, under the authority with which he had been clothed by his principal, must see to it that he settles with the proper person.

Notice of facts to an agent is constructive notice to the principal himself, when it arises from, or is at the time connected with, the subject-matter of his agency; for, upon general principles of public policy, it is presumed that the agent has communicated such fact to the principal, and if he have not, still the principal, having intrusted the agent with the particular business, the other party has a right to deem his acts and knowledge obligatory upon the principal; otherwise the neglect of the agent, whether designed or undesigned, might operate most injuriously to the rights and interests of such party. (Story on Agen., § 140.) The foregoing rule is laid down on the authority of other elementary writers, and quite a number of adjudicated cases in the United States and in England. (See note to § 140 above cited.) The injury to result from a different rule, applied to this case, would be to compel the party to seek redress against the estate of a deceased non-resident's estate, which would be equivalent to no redress at all.

Under the proof, the authority of George A. Sublett over the subject, at the date of his contract with Smith, was greater than that of an ordinary agent. It was an authority coupled with an interest, and therefore irrevocable, (Story on Agen., §§ 408, 477, 483, 485, 489, 490, and authorities there referred to,) and being equally interested with Philip A. Sublett, although perhaps not invested with legal title, yet he possessed such equitable title as would make his contract binding upon the land for labor be-

stowed upon it; for to hold these contracts at the mercy of the owner of the legal title would enable him to procure his lands to be located, and, by private arrangement, to defeat the locator of any compensation whatever.

It may be objected, that the plaintiff ought not to recover, because he does not show a full compliance with the contract; if he did not procure the patent, he was prevented by the opposite party, and is therefore excused. By the contract, Sublett was to pay for surveying, and Smith the patent fee. The plaintiffs offered to pay the patent fee and offset the surveying fee, or to pay it unconditionally, and tendered a lien upon the land to secure its payment, thereby offering to do equity whilst seeking equity. As these parties, Philip A. Sublett and George A. Sublett, are shown by the proof to be near relations, the presumption is strengthened that each knew of the other's doings in the premises.

*D. M. Prendergast,* for defendants in error.

WILLIE, J.—The court did not err in overruling the objection made to the pleadings of the intervenor, that they were inconsistent and contradictory. A defendant may plead as many inconsistent pleas as he may choose, so they are pertinent and in due order of pleading. (Fowler v. Davenport, 21 Tex., 633.)

We see no reason why the same latitude should not be allowed to an intervenor, who is occupying the position of a defendant, and opposing a claim to a portion of his property asserted by a plaintiff. Nor is it perceived that there was any error committed by the court in rendering judgment for the intervenor under the evidence adduced in the cause. The authority conferred upon George A. Sublett by the intervenor's intestate was in the nature of a personal trust, and did not imply the right of substitution. The doctrine in relation to substitution is, that the

authority is exclusively personal, unless from the express language used, or from the fair presumption growing out of the particular transactions, or of the usage of trade, a broader power was to be conferred upon the agent. (Story on Agency, § 14.)

The contract between Philip and George Sublett does not come within either of these exceptions. No express power of substitution was given. It could not be inferred from the nature of the transaction, for this involved a confidence in the locator's judgment in making advantageous selections of land in the country where the certificate was to be located, in his integrity in faithfully performing his duty to the best interest of his principal, and in his energy in complying at an early time with the requirements of his contract. We cannot presume that these trusts were intended to be transferred to another, and there was no usage or custom of the country proved as to the right of substitution in agencies for the location of land.

It cannot be said that the intestate was chargeable with notice of all acts done by George A. Sublett in reference to the location of the land. So long as he acted within the scope of his authority the intestate would have been thus chargeable, and liable to third persons for any obligations contracted by him. His authority did not extend to substitution. He was not held out to the public as having competent authority to make contracts for the location of the land. This power was not expressly given. We have seen that it was not implied, nor did it result from the possession of the certificate. This latter was transferred by William, the original grantee, to Philip A. Sublett, but there was no transfer from the latter to the defendant, George A. Sublett. It was not an instrument the title to which passed by delivery, and the presumption was that it belonged to the assignee, and not to the one in whose temporary possession it was found. The mere fact that it was not assigned to George Sublett was sufficient

to put Smith on his guard in making a contract for locating it for the benefit of the former. Philip A. Sublett did not clothe his agent with any of the apparent muniments of title to the certificate, and did not assist in any deception which George may have practiced upon Smith. Possession of the certificate by the locator would have necessarily occurred in any contract for the location of lands, and was not, therefore, a circumstance calculated to make Smith believe that George A. Sublett had more control over its location than was usual and customary.

The whole doctrine in reference to this matter is thus laid down by Mr. Story: "Where the agency is not held out by the principal, by any acts or declarations or implications, to be general in regard to the particular act or business, it must from necessity be construed according to its real nature and extent; and the other party must act at his own peril, and is bound to inquire into the nature and extent of the authority actually conferred. In such a case there is no ground to contend that the principal ought to be bound by the acts of the agent beyond what he has apparently authorized, because he has not misled the confidence of the other party who has dealt with the agent." (Story on Agency, § 133.)

From anything that appears in the evidence, Philip Sublett was entirely ignorant, up to his death, of the contract made between George A. Sublett and Thomas J. Smith. A settlement took place in the year 1849 between the two Subletts, in which the land located under the Williams head-right was included, and in it George Sublett was fully paid off for his services in locating the above head-right. This settlement having taken place in entire ignorance on the part of the intestate of any claim of the locator, Smith, would exonerate him from any personal liability for the acts done by George A. Sublett, in which his agency was not disclosed, and where third parties treated with him as principal. (Story on Agency, § 449.)

The fact that the intervenor's intestate received the patent to the land located by virtue of the contract between his agent and Smith, under the circumstances of this case, does not amount to a ratification of that contract. The patent seems to have been obtained from the land office by George A. Sublett; if so, there was no presumption that Philip Sublett derived from the records of that office, at the time the patent was taken out, any information as to who was the real locator of the land. Receiving the patent could not be construed into ratification of an act, preceding its issuance, of which the party receiving had no knowledge. The remedy of the plaintiffs in this case, if any they had, was against George Sublett personally, and not against the land of the intervenor's estate, located under the Williams head-right. (Bodley v. Pool, 1 Monr., 78.)

THE JUDGMENT IS AFFIRMED.