### C. M. Lawshe v. The State.

No. 20. Decided October 13, 1909.

**1.—Embezzlement—Extradition—Indictment.**

Where, upon trial for embezzlement, the defendant moved to quash the indictment on the ground that he was arrested without proper warrant of extradition in the Republic of Mexico, but adduced no proof on said motion, the same could not be considered on appeal.

**2.—Same—Bill of Exceptions—Retiring Jury.**

Where, upon appeal from a conviction of embezzlement, appellant's objection to the retirement of the jury by the court to hear a discussion of the law was not reserved by proper bill of exceptions, the same could not be considered.

**3.—Same—Charge of Court—Felony—Same Transaction.**

Where, upon trial for embezzlement, the evidence showed that the receipts of the company's office, for which defendant acted as agent, ran from $1,200 to $1,800 per month; that the aggregate shortage of defendant was shown to have been a sum largely in excess of $500; that as much as $300 had not been accounted for on a certain day, and was appropriated by him, there was no error in the court's charge that, if defendant's misappropriation was in excess of $50, to convict him of a felony, and in failing to charge that such misappropriation must have occurred at one time, as the transactions were continuous. Following Taylor v. State, 29 Texas Crim. App., 466.

**4.—Same—Charge of Court—Other Offenses—Intent.**

Where the defendant was tried for the embezzlement of certain monies coming into his possession as station agent of a railway, and testimony was admitted that he was also agent of a certain express company, and that he was short in his accounts in both capacities, and the court instructed the jury that his shortage as express agent was admitted in evidence solely to show his intent, and not for the purpose of showing his guilt, there was no error.

**5.—Same—Evidence—Imputing Crime to Another—Animus.**

Upon trial for embezzlement there was no error in rejecting testimony of the

defense to show animosity or ill-will of a coemploye; the latter not being a witness, and there being no testimony that he misappropriated any of the company's money; besides the court instructed the jury that, if there was any reasonable doubt that some other person or persons than defendant had misappropriated said money, to acquit defendant, there was no reversible error.

Appeal from the District Court of Austin County. Tried below before the Hon. L. W. Moore.

Appeal from a conviction of embezzlement; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*John P. Bell,* for appellant.—On question of court's charge on felony, cases cited in the opinion. On question of retiring jury: Patterson v. State, 60 S. W. Rep., 557.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was convicted in the District Court of Austin County on January 15 of this year on a charge of embezzlement, and his punishment assessed at confinement in the penitentiary for a period of two years. From this judgment he appeals to this court and seeks a reversal thereof on many grounds.

The facts, briefly stated, show that something like a year prior to the 26th day of June, 1906, appellant had been station agent of the M., K. & T. Ry. Co. of Texas, at Sealy, in this State, and was also agent for the American Express Company at the same place. On the last named date F. G. Abbey, who was then traveling auditor for the railway company, and W. T. Davis, who occupied a similar position with the American Express Company, appeared at Sealy to check up appellant's accounts. An examination of the books and accounts of these companies showed a shortage to the railroad company of $573.86, and a shortage to the Express Company of $170.53. According to the testimony of Davis appellant admitted the shortage, and said to them that they had better telegraph for another agent. That they then asked appellant if he knew how much he was short, and that he would not tell at first, but afterwards said he was short enough, and finally said that he was three or four hundred dollars short. That immediately on entering the station they counted the money and checks on hand, which amounted to the sum of $131.93, which they replaced in the safe and for the time being left appellant in charge. That during the day he left Sealy, and left the safe locked. That on obtaining the combination the next day they counted the money in the safe and found $96.08. The witness Davis testified that in a conversation with appellant he asked him what had become of the money, and was told that he did not know what had become of it; that his

family troubles had been enough to drive a man crazy, and that he had lost part of the money playing poker, and also said that he had led an awful life. It was admitted by appellant that he left Sealy on that day, driving to a nearby town where he took the train and went to Mexico, where he was subsequently recaptured on this charge on July 13, 1906. It was also disclosed by the testimony of the witnesses named above that they found on appellant's cash-book an entry of three hundred dollars as having been remitted on June 21, 1906, and that on his attention being called to it, that appellant stated that in truth the remittance had not been made. Appellant, in his own behalf testified, in substance, that almost from the time he went to Sealy to act as station agent shortages in his account began to appear. He denied that he had taken any part of the money, and testified, in substance, that he had turned over from the beginning the larger part of his salary to make these shortages good, and also testified that during the time he had sold some land which he had in Kansas to help cover the shortage; that this amounted to one hundred dollars, which he had put in the money drawer, and that the original draft was remitted to the American Exchange National Bank of Dallas for account of the railway company. On cross-examination the various deficits for each month were distinctly shown by the witnesses, and he admitted from time to time he had covered up these shortages. His statement of how this was done is in this language: "In making up my report every month I would place a sufficient number of freight amounts in the uncollected list to cover up the shortage of the month before and in that way kept it covered from month to month as it got larger; before doing this, however, I would place my pay check in the company's money in an effort to hide it that way if I could." It was shown by other persons that a number of employes about the office had access to the cash, and had frequently been in the habit of receiving payments for tickets, freight shipments, and telegraph and express tolls. When arrested appellant had a very small amount of money, less than a dollar, and a meal ticket of value less than a dollar.

1. The court, in charging the jury, explained to them quite fully all the elements constituting the crime of embezzlement, and among other things, submitted to them the issue as to whether appellant "did embezzle fraudulently, misapply or convert to his own use without the consent of the said The Missouri, Kansas & Texas Railway Company of Texas, any money belonging to said railway company which may have come into his possession or be under his care by virtue of his agency or employment of the value of $50 or over, and you further believe that each of the four essential requisites of embezzlement as above set forth in this charge have been established by the testimony beyond a reasonable doubt, then and in that

event you will find the defendant guilty of embezzlement, and if you further believe, beyond a reasonable doubt, that the value of the property embezzled amounted to the sum of $50 or over then you should convict and assess his punishment as before defined and instructed." The court also instructed the jury that if they should believe beyond a reasonable doubt that the money was embezzled as alleged, yet if they had a reasonable doubt as to whether some person or persons other than the defendant took the money, they would acquit him.

2. Among other grounds upon which a reversal is sought is the refusal of the court to set aside the indictment and dismiss the case on the ground, in substance, that appellant had been arrested in Mexico and brought into Texas without a proper warrant of extradition. This matter is presented in a sworn motion by appellant in which he avers, in substance, that he was arrested on July 13, 1906, by one Burns, a deputy sheriff of Austin County, Texas, said Burns claiming to have a warrant and proper extradition papers for the purpose of arresting him on said charge. In his motion he makes the following allegation that "he verily believes that said Ed. Burns did not have the legal and necessary extradition papers, warrants, and authority to arrest and forcibly bring defendant from Mexico into Austin County, Texas, on the charge herein preferred or on any charge whatsoever." There was no proof adduced on this motion, nor are the facts therein stated authenticated in any manner or form. The averment that "he believed that Burns did not have the *legal* and necessary extradition papers, warrants, and authority" was a mere conclusion, and certainly, in the absence of proof, could not have the effect to arrest the proceedings and entitle appellant to a discharge.

3. Again, it is urged that the court erred, after the conclusion of the evidence, in retiring the jury over appellant's protest, and then announcing to counsel that he would hear a discussion of the law. If in any event this could avail appellant, the matter is not preserved by any bill of exceptions, and the whole complaint rests merely upon the statements contained in motion for a new trial.

4. Again, it is claimed that the court erred in not charging the jury that before they could convict, the proof must show an embezzlement at *one time* of a sum exceeding $50. In this connection it should be stated that Davis testified that he was unable to say precisely what character or amount of money—checks, gold, silver or currency—was taken by appellant at any one time. Appellant's testimony denying the embezzlement raised the issue that the shortage occurred in different months, and that the first shortage was in the amount of $40. The proof of the State strongly indicated that at least $300 of the money was embezzled at one and

the same time, and also suggests that on the 25th of June, that there was taken from the safe and misappropriated by appellant $35.85. Except for the statement of appellant of a shortage of about $40 the first month he begun working for the railway company at Sealy, there is no other suggestion of any particular amount either lost or misappropriated. As authority for his position and insistence appellant refers us to the cases of Lacey v. State, 3 S. W. Rep., 343, and Cody v. State, 31 Texas Crim. Rep., 183, 20 S. W. Rep., 398. We do not believe that either of these cases are in point here. The case of Lacey v. State, supra, was a case of theft. It there appeared that there had been, as stated in the opinion, a series of constantly recurring thefts during the month. The record was silent as to the amount and value of lumber taken on any one particular occasion or night. Judge Hurt, summarizing the facts, uses the following language: "Hence we have no fixed amount of lumber taken on the night testified to by the witness, nor have we any aggregation of the previous takings, so that a due subtraction may be made, and a certain amount and value taken on that or any other night fixed." The Cody case, supra, was also a theft case, where it appeared that certain sacks of cottenseed meal worth a dollar per sack had been taken on different trips and occasions on the same day, and the court charged the jury that before they could convict of a felony they must be satisfied beyond a reasonable doubt that the defendant took during *one day* a sufficient amount of cottonseed meal to the value of $20 or over. The charge is considered objectionable, among other things, because "It is to be observed, however, that whether it is one continuous transaction or distinct and separate transactions is a question for the jury, and it can not arbitrarily be fixed by the court at one day, or at any other definite period." These cases are based on the fact that in theft it is the fraudulent asportation or taking from the owner which constitutes the offense. Here it is not the mere receipt or manual handling of the funds or money that constitutes the offense. Under the evidence appellant was entitled to receive the money, and it is for its fraudulent appropriation when so received by virtue of his agency that he is amenable to law. The testimony shows that the receipts of the office ran from $1200 to $1800 per month. The aggregate shortage is shown to be a sum largely in excess of $500. The proof strongly supports the contention that the $300 for which credit had been taken on the 21st day of June, on his cash-book and no remittance had been made therefor, was on that day and time appropriated by him. Under the facts of this case we think it was not incumbent for the court to do more than instruct the jury as he did do if the sum taken and misappropriated was in excess of $50, he could be convicted of a felony and his punishment assessed accordingly. The employment and all the

transactions were continuous, nor was the issue of an embezzlement of less than $50 raised. Taylor v. State, 29 Texas Crim. App., 466.

5. Again, it is complained that the court erred in admitting in evidence the testimony of the witness Davis as to the fact that appellant was the agent for the American Express Company, and also that there was a shortage in the accounts of this company. When this testimony was offered the court distinctly told the jury at the time that it was admitted not for the purpose of showing another offense, but solely and wholly on the question of showing motive and intent, and that the jury would be so instructed. In pursuance of this statement the court did in his general charge thus instruct the jury: "The shortage if any, of the money belonging to other companies was admitted in evidence only for the purpose of showing the intent of the defendant if it does so and was not admitted for the purpose of showing the guilt of this defendant of any other money belonging to such other companies, and you will not consider it for any such purpose." We think there was no error in admitting this testimony.

6. Again, on the trial appellant offered in evidence his own testimony and the testimony of other witnesses to the effect, in substance, that one Elliott employed by the company at Sealy had threatened, in the event appellant superseded him with another employe, to get even with defendant, and that he would fix matters so he would be sent to the penitentiary. The evidence shows that Elliott quit the service of the Missouri, Kansas & Texas Railway Company of Texas on the first day of May, 1906, and never returned. There is no evidence in the record that Elliott was charged with the custody of this money; that he was under any obligation for its safe keeping, though it does show that on frequent occasions he collected money and had more or less unrestricted access to the cash received from day to day. Appellant also testified that he had never spoken to anyone during any of these months about any shortage, though it appears from his testimony that he made complaint and desired Elliott's removal, and also that on one occasion he asked that the combination of the safe be changed. In this state of the record the court instructed the jury as follows: "If you should believe beyond a reasonable doubt that said money was embezzled, as alleged, yet if you have any reasonable doubt whether some person or persons other than this defendant did take said money, you will acquit." It is not believed that the personal animosity or ill-will of Elliott towards appellant could in any event be a controlling factor in the case. He was not a witness and his personal relations with appellant are not material. Nor is there any showing in appellant's testimony that in fact Elliott ever took any money, or if so, when and how much. At most, the testimony raises a bare suspicion. Even if admissible, the rejection of this

testimony was not of such importance as could or would in the nature of things have changed the result.

There are some other matters presented which, we think, are not of such importance as to demand discussion.

Finding no error in the record, the judgment of conviction is affirmed.

*Affirmed.*