## J. D. POWELL V. THE STATE.

### No. 4565. Decided June 27, 1917.

### Rehearing denied November 14, 1917.

**1.—Embezzlement—Principal and Agent—Subagent—Rule Stated.**

While it is the general rule of the law that in the absence of any authority, express or implied, an agent has no authority to employ a subagent, there are however, exceptions and modifications of the rule growing out of the necessity and exigencies of the case, or based upon the custom or usage of trade in like cases. Following Eastland v. Maney, 36 Texas Civ. App., 147, and other cases.

**2.—Same—Rule Stated— Subagent—Principal and Agent.**

The general rule is that in the appointment of an agent by a principal to do a given thing for him the authority is personal and can not be delegated to a subagent, unless from the express language used or from their presumption growing out of the particular transaction or of the usage of trade a broader power was to be conferred upon the agent. Following Smith v. Sublett, 28 Texas, 170, and other cases.

**3.—Same—Case Stated— Subagent—Embezzlement—Charge of Court.**

Where, upon trial of embezzlement, defendant claimed that he was the subagent of the principal agent and therefore not the agent of the principal when he received the alleged embezzled money, but the evidence showed that the principal and her principal agent contemplated and intended that the said principal agent should employ a subagent to collect a certain note and interest for the principal at a certain distant place, and the circumstances excluded the idea that the principal agent was to go there in person to make the collection and implied the right to employ the defendant as subagent to make the collection, this made the defendant the agent of the principal, and the conviction for embezzlement is sustained under a proper charge of the court.

**4.—Same—Principal and Agent—Subagent—Implied Authority.**

Where, upon trial of embezzlement, the evidence was sufficient to show that the principal agent had the express power and authority from his principal to employ defendant to collect and receive the alleged money for the principal, or that if said authority was not express, the same was implied and that therefore defendant was the employee and the agent of the principal, notwithstanding that the said principal did not make the appointment in person and may not have

known thereof at the time when the principal agent appointed the subagent, the conviction was sustained.

### 5.—Same—Lawful Money—Check—Variance.

Where, upon trial of embezzlement, the defendant contended that as the indictment alleged that the $373.75, in money, collected and received by him on the alleged note and which he embezzled was lawful money of the United States of America, that the State had to prove literally that he received the money and that it was lawful money of the United States of America, and that the evidence showed that defendant 'had not received physically the money but a check therefor and that therefore this was a case of variance between the allegation and proof, the same is untenable. Following Medders v. State, 54 Texas Crim. Rep., 494, and other cases.

### 6.—Same—Motion for Rehearing—Statement in Original Opinion.

Where appellant in his motion for rehearing contended that the court did not correctly quote the evidence in the original opinion, and that there was in fact no testimony that he ever drew out of the bank in small checks all the money of his principal which he had collected for her and deposited it in his own name or that he in fact, drew out any of said money, but the record showed the reverse of said contention, there was no reversible error.

### 7.—Same—Rule Stated—Conversion—Defensive Theory.

The correct legal principle applicable to this character of case is that when the State has shown by competent evidence the receipt of money or other property by the carrier, to be carried and disposed of in a particular way, and the State shows that it was not delivered and disposed of in the way and manner as agreed upon, and this is established beyond a reasonable doubt, then if the party intrusted with the property had made some other disposition thereof, not criminal, he must in order to relieve himself of conversion introduce proof of such disposition. Following Evans v. State, 40 Texas Crim. Rep., 54, and other cases.

### 8.—Same—Rule Stated—Embezzlement—Conversion.

A conviction for embezzlement will be sustained where defendant was intrusted with money or property to be disposed of in a particular way and the proof shows he did not do this, and defendant fails to show an honest disposition thereof. Following Hamer v. State, 60 Texas Crim. Rep., 341, and other cases.

### 9.—Same—Embezzlement—Felony—Misdemeanor.

Appellant's contention that the State must prove he checked out of said deposit he made, at least more than $50 at one time, in order to show he was guilty of felony embezzlement, has been expressly and repeatedly held against him by this court. Following Lawshe v. State, 57 Texas Crim. Rep., 32, and other cases.

Appeal from the District Court of Clay. Tried below before the Hon. Wm. N. Bonner.

Appeal from a conviction of embezzlement; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Kay & Akin* and *Taylor, Allen & Taylor,* for appellant.—On question of principal and agent and sub-agent: Smith v. Sublett, 28 Texas, 163; McCormick and Brother v. Busch, 38 id., 315; Tynan v. Dullnig, 93 Texas, 722, 25 S. W. Rep., 645; Armstrong v. O'Brian, 83 Texas, 635; Gibson v. Grey, 17 Texas Civ. App., 646, 43 S. W. Rep., 922; Williams v. Moore, 58 S. W. Rep., 953; Eastland v. Maney, 81 S. W. Rep., 574.

Upon question of lawful money of the United States: Berry v. State, 80 S. W. Rep., 630; Butler v. State, 81 id., 743; Lewis v. State, 12 id., 736; Nesbitt v. State, 65 Texas Crim. Rep., 349, 144 S. W. Rep., 944.

Upon question of bank check: Baker v. Kennedy, 53 Texas, 200; House v. Kountz Bros., 93 Texas, 641.

*E. B. Hendricks,* Assistant Attorney General, for the State.—Cited cases in opinion.

PRENDERGAST, Judge.—Appellant was convicted of embezzlement and assessed the lowest punishment.

He was indicted by the grand jury of Archer County. By agreement the venue was changed to Clay County, where the trial occurred.

The indictment averred that appellant, in Archer County, Texas, on or about January 27, 1915, was then and there the agent and employe of Florence C. Field, a private person, and that he did then and there fraudulently embezzle, misapply and convert to his own use, without the consent of Mrs. Field, certain money, towit, $373.75, the same being lawful money of the United States of America of the said value of $373.75, and which was the corporeal personal property of and belonging to Mrs. Field, and which said money had theretofore come into the possession of and was then and there under the care of the said Powell by virtue of his said agency and employment.

There are but two questions to be decided: one is whether appellant was Mrs. Field's agent or employe when he received the embezzled money, and the other is whether he received money, lawful money of the United States.

The facts shown were that in February, 1914, and prior thereto, J. D Powell and one W. C. Young were partners in the real estate business and lived and did business in Archer City, in Archer County; and then conducted their business under the name of W. C. Young Land Company. While they were partners Powell was the manager. It seems they dissolved before January, 1915.

Said Mrs. Field lived in Dallas. So did her general agent, Mr. C. B. Gillespie. Since 1912 Mr. Gillespie had entire charge, as her general agent, of all her business and he had authority to employ Mr. Powell or anyone else to collect Mrs. Field's notes, and everything he did in the matter was done with her sanction and approval.

In 1914 Mrs. Field owned some land in Archer County. In the early part of that year Mr. Gillespie, her general agent, employed said firm of W. C. Young Land Company to sell that land for Mrs. Field, which they did, selling it to Helm & Rayborn. At the time of the sale and as a part of the purchase money thereof, Helm & Rayborn executed to Mrs. Field seven notes for $373.75 each; one each due annually until all matured. They were each dated February 21, 1914, signed by said Helm & Rayborn, each payable to the order of Mrs.

Field; the first one due on or before February 1, 1915, payable at Archer City, they each retaining a lien on said land and had the usual maturing and securing and attorney's fee clauses. Shortly before the first note became due Mr. Gillespie, for Mrs. Field, sent it, in a letter addressed to said land company at Archer City for collection. At the time Mr. Gillespie knew that Mr. Powell, appellant, was or had been manager of said land company and all of his previous transactions with that firm had been with Mr. Powell himself. At the time he sent this note in said letter he also enclosed therewith a receipt for the interest for one year on all the other of said notes. At the time he sent this note and receipt he did not know that said land company had dissolved but he knew that said Powell had charge of the concern and he was the only man that he knew in it. In this letter transmitting the note and receipt, Mr. Gillespie stated that he was sending it for collection for Mrs. Field. All the correspondence thereafter carried on between Mr. Gillespie as Mrs. Field's agent and said Powell was carried on in the name of Mr. Powell individually.

As soon as Mr. Powell received said note and receipt for collection he promptly notified Mr. Helm that he had the said note "in favor of Mrs. Field," and asked him if it would be satisfactory to pay it through him as it would be to pay it direct to Mrs. Field, as he would get a commission out of it if paid through him. At the time he enclosed Mr. Helm a statement showing that the year's interest, $197.10, and the principal of the note, $373.75, would make $570.85. Thereupon, on January 27, 1915, Mr. Helm sent Mr. Powell his check on a Wichita Falls bank for the $570.85, payable to powell, dated said date. Powell thereupon sent the note and receipt for the interest to Mr. Helm. On January 30th Powell endorsed his name on the back of that check and deposited it in the bank at Archer City to his own credit, and that bank at that time gave him credit therefor. The bank at Archer City sent the check through its bank correspondent and in the usual course of business the check was paid and returned to Mr. Helm and produced and introduced on this trial. Between the dates of January 30th and February 27th appellant drew out of the Archer City bank all of said money on various small checks—some of them were perhaps later than February 27th.

Although Powell collected said note and interest on January 30th and placed it all to his credit in the Archer City bank he did not remit a cent of it to Mrs. Field or to Mr. Gillespie, her general agent, until February 17th following. On February 15th Mr. Gillespie wrote to Powell, evidently inquiring whether he had collected the note and interest. On February 17th Powell answered that letter and sent Mr. Gillespie a check for $197.10, saying "covering interest on the Field notes and beg to say that the principal will be met in a short while." The principal of the note, $373.75, and no part of it has ever been remitted by Powell; instead he appropriated and embezzled the whole of it himself. Appellant did not testify.

He contends that the evidence showed that in the collection and receipt of said money he was not the agent or employe of Mrs. Field. Mr. Gillespie swore: "I had general authority from Mrs. Field to handle her business. I was collecting this money for Mrs. Field; my whole connection with the matter from start to finish was for her, as her agent, acting under a power of attorney, at Dallas. Mrs. Field is a widow and I handle and have handled all of her business since 1912." He further swore that when he sent this note and receipt in his letter to said land company or J. D. Powell, "I stated that I was sending it for her, Mrs. Field, and all of my correspondence states that . . . I assumed the authority because Mrs. Field did not know Mr. Helm or Mr. Powell, or anybody else, and the land had been sold by them through me . . . and I acted in the same way that I sent the collection there to them. I think that I could have employed anybody else—that I had the authority to employ Mr. Powell or anybody else to do the collecting of this note. I think that would have been permissible under Mrs. Field's authority to me to collect her paper. . . . As to whether the selection of the W. C. Young Land Company or J. D. Powell was wholly a selection of mine to represent me in the collection of this paper (or) for my principal, Mrs. Field, will say everything that I did in the matter was done with her sanction and approval." He further swore that in sending the note and receipt for collection as stated, "I represented Mrs. Field in the matter and, of course, the note was not mine."

In testifying about the sale of her land in Archer County to Helm & Rayborn, Mrs. Field swore: "I had nothing whatever to do with that transaction myself; Mr. C. B. Gillespie acted as my agent, had entire charge of it and handled the matter for me." On cross-examination when asked if Mr. Powell collected the money for her or was her agent she swore: "No one ever attended to anything of that kind for me but Mr. C. B. Gillespie—he has entire charge of everything. . . . Mr. Gillespie attends to everything of that kind." On redirect examination she swore: "Yes, sir; I did leave the matter of selecting who should collect or the collection of this note to Mr. Gillespie, and whoever he got in Archer County to collect the note was all right with me; it was all right for Mr. Gillespie to select whom he chose, for he has entire charge of my entire estate."

Mr. Helm swore that just before this first note was due "Mr. J. D. Powell notified me that he had one of these notes of mine that was due, in favor of Mrs. Field, and asked me if it would be satisfactory to me to pay it through him as to pay it direct to Mrs. Field; that he would then get a commission out of it, and of course I told him that it would be satisfactory to me. I paid the note through Powell, and got my note. . . . At that time in addition to paying that note to Mr. Powell, which was $373.75, I also paid to him the interest on the series of notes which amounted to $197.10, making $570.85, principal and interest, that I paid him—to J. D. Powell."

As stated, Mrs. Field and Mr. Gillespie lived in Dallas. Mr. Helm and appellant lived in Archer County. The note was payable to the order of Mrs. Field. She did not endorse it. It was payable in Archer City. Mrs. Field did testify she did not employ Powell, and he was not her agent or employe, but her testimony shows she meant she did not personally employ him, and, therefore, because she did not personally employ him she said he was not her agent or employe.

In Eastland v. Maney, 36 Texas Civ. App., 147, Maney sued Eastland and others for his commissions which he claimed were due him for selling their land in Frio County, as their subagent. The court correctly held: "It is a general rule of the law that in the absence of any authority, express or implied, an agent has no authority to employ a subagent, the trust committed to him being personal, and he can not delegate it to another so as to affect the rights of the principal. There are, however, exceptions and modifications of the rule growing out of necessities and exigencies of a case, or based upon the custom or usage of trade in like cases. There are instances when the employment of subagents is essentially necessary in order to execute the agency, and the authority of the agent will be construed to include the necessary and usual means to properly execute it. Bodine v. Insurance Co., 51 N. Y., 117; Dorchester Bank v. New England Bank, 55 Mass., 177; Bank v. McGilvray, 70 Mass., 518.

"At the time of the employment of appellee it was alleged that Hihn and Alfred T. Eastland were empowered as agents to sell the land. They were residents of California and the land was situated in Texas, and it is a fair presumption growing out of the exigencies of the transaction that it was contemplated that a purchaser should be obtained through a subagent. Smith v. Sublett, 28 Texas, 163; Tynan v. Dullnig, 25 S. W. Rep., 465. It follows as a corollary to the above proposition that if the circumstances of the case justified the appointment of a subagent the principal would be liable for his compensation."

In Wright v. Isaacks, 43 Texas Civ. App., 223, it was shown that Mrs. Jemison, who lived in Alabama, appointed Mr. Meldrum, who lived in Houston, her agent to sell lots for her situated in the town of Cleveland. Mr. Meldrum employed one Peebles, who lived in Cleveland, as a subagent to consummate sales of these lots. The court in that case correctly held: "It may be conceded that Peebles had not full authority as an agent of Mrs. Jemison to sell lots, and that Meldrum being an agent of Mrs. Jemison himself for that purpose, could not delegate such authority to Peebles. Meldrum, however, in his capacity of agent could authorize Peebles to perform such merely ministerial acts with regard to the subject matter of his agency as did not involve the exercise of judgment and discretion, such as pointing out the lots to be sold upon the ground, receiving offers to purchase and transmitting the same to Meldrum, and also advising and informing purchasers as to the proper description of lots by numbers on the map of the town when the same were pointed out by him. The power

of Meldrum to delegate to Peebles the performance of such acts may be implied from his own agency, and the acts of Peebles under such delegated authority would be binding upon the principal, Mrs. Jemison. (Mechem on Agency, sec. 193; 1 Am. & Eng. Ency. of Law, 978-980; Williams v. Moore, 24 Texas Civ. App., 402; McKinnon v. Vollmar, 17 Am. St. Rep., 178; Renwick v. Bancroft, 56 Iowa, 527.)"

It was expressly held in the case of Smith v. Sublett, 28 Texas, 170, that the general rule is that in the appointment of an agent by a principal to do a given thing for him, the authority is personal and can not be delegated to a subagent, "unless from the express language used, or from their presumption growing out of the particular transactions, or of the usage of trade, a broader power was to be conferred upon the agent. (Story, Agency, sec. 14.)"

In Wilson v. Smith, 44 U. S. Sup. Ct. Rep., 763, 11 L. Ed., 820, it was shown that Holcombe of Augusta, Ga., drew a draft in favor of Wilson & Co. on Mills of Savannah in said State, which was accepted by him. When it became due Wilson & Co. placed it in St. John's hands at Augusta for collection; St. John forwarded it to the defendant Smith for collection at Savannah. Smith collected it and credited it to the account of St. John, to whom he was indebted. St. John became insolvent, failed in business and later died. Thereupon Wilson & Co. sued Smith for the money. Smith defended on the ground, among others, that there was no privity of contract between him and Wilson & Co. because he was the subagent of their agent to collect the money and as such subagent only he had collected the money. The United States Supreme Court through Chief Justice Taney held: "According to the usual course of dealing among merchants, the transmission of the paper to St. John gave him an implied authority to send it for collection to a subagent at Savannah, for it could not have been expected by the plaintiff that St. John was to go there in person, either to procure the acceptance of the bill, or to receive the money, nor could St. John have so understood it. So far, therefore, as the question of privity is concerned, the case before us is precisely the same with that of the Bank of the Metropolis v. New England Bank (1 How., 234). In that case, the bills upon which the money had been received by the plaintiff in error, were the property of the New England Bank, and had been placed by it in the hands of the Commonwealth Bank for collection, and were transmitted by the last mentioned bank to the Bank of the Metropolis in Washington, where the bills were payable. And upon referring to the case it will be seen that the court entertained no doubt of the right of the New England Bank to maintain the action for money had and received, against the Bank of the Metropolis. . . . We think the rule very clearly established, that whenever, by express agreement between the parties, a subagent is to be employed by the agent to receive money for the principal, or where an authority to do so may fairly be implied from the usual course of trade, or the nature of the transaction, the principal may treat the subagent as his

agent, and when he has received the money, may recover it in action for money had and received."

The same doctrine is well established by the decisions of many courts and of the text-book writers. 2 C. J., p. 688. Mechem on Agency (2 ed., 1914), in section 316, says: "It is obvious, too, that notwithstanding the general rule, there are many cases wherein from the very nature of the duty, or the circumstances under which it is to be performed, the employment of subagents is imperatively necessary, and the principal's interests will suffer if they are not so employed. In such cases, although the general rule might otherwise apply, an exception is suggested based upon the presumed assent of the principal, and, therefore, if he has not manifested a contrary intent, the power to employ the necessary subagents will be implied. The authority of the agent is always construed to include the necessary and usual means to execute it properly.

"Thus, if a note be sent to a bank for collection, and for the protection of the principal it becomes necessary to have the note protested, the authority of the bank to employ the proper officer will be implied; and so if a note or draft be sent to a bank or other agent, to be collected at a distant point, the authority of the bank or other agent to employ a subagent at the place of collection, and to forward the note or draft to him there, would be presumed." Again in section 319 he says: "And so, if the employment of a subagent was contemplated by the parties at the time of the creation of the agent's authority, or if it was then expected that subagents might or would be employed, this would be treated as at least implied authority for such employment.

"The fact that the employment of subagents was contemplated by the parties need not be shown by express proof. The nature of the service, the place at which it is to be performed, the distance between the place of appointment and the place of performance and similar circumstances may be taken into account."

Undoubtedly both Mrs. Field and Mr. Gillespie contemplated and intended Mr. Gillespie for her should get some subagent at Archer City to there collect the note and interest for her. The distance and the very collection itself would exclude the idea that Mr. Gillespie was to go there in person to make the collection, and it would clearly show he had the right to employ appellant as her agent to make the collection.

There can be no doubt of the correctness of the propositions of law above, nor of the application of them in this case.

The court specifically, in his charge, told the jury, among other instructions, that one of the essential requisites to constitute the offense of embezzlement was the defendant's agency whereby he was charged with the duty of receiving the property and the receipt of it by virtue of his agency, and required the jury to believe this beyond a reasonable doubt with the other requisites before they could find him guilty. Appellant made no objections to the court's charge, but in addition to the court's charge he gave several special charges, requested by appel-

lant. Among them these: "That unless you find from the evidence beyond a reasonable doubt, that the defendant, J. D. Powell, was the agent or employe of Mrs. Florence C. Fields at the time he received the check from S. G. Helm, then you are instructed that you can not convict the defendant, and your verdict will be not guilty."

"Requisite No. 2 in the court's main charge is as follows: 'The receipt of the property.' By that is meant that the defendant must receive the identical property charged in the indictment, which is lawful money of the United States of America; and you are instructed that the term money as defined by article 1419 of the Penal Code is as follows: 'The term money as used in this chapter includes besides gold, silver, copper or other coin, bank bills, government notes or other circulating medium current as money.' And unless you find from the evidence beyond a reasonable doubt that the defendant by virtue of his agency or employment of Mrs. Florence C. Field, did receive lawful money of the United States of America as hereinbefore defined, and did fraudulently embezzle, misapply or convert said money as hereinbefore defined, then you will acquit the defendant and so say by your verdict." Others of his special charges are quoted below.

Undoubtedly the evidence was sufficient for the jury to believe therefrom that appellant was the agent or employe of Mrs. Field in collecting and receiving the money on said note.

The evidence was sufficient to show that Mr. Gillespie had the express power and authority from Mrs. Field to employ appellant to collect and receive said money for her. But if not the express, then unquestionably, the implied power and authority to so appoint and employ him, and that he was the employe and agent of Mrs. Field in the matter, notwithstanding she, herself, personally did not make the appointment and may not have known at the time that Mr. Gillespie had done so.

The other contention of appellant that as the indictment alleged that the $373.75 in money collected and received by appellant on said note and which he embezzled was "lawful money of the United States of America," that the State had to prove literally that he received the money and that it was lawful money of the United States and that as appellant was not shown to have received physically the money but a check therefore there was a fatal variance between the allegation and the proof.

This identical question has been expressly and correctly held against appellant. In Medders v. State, 54 Texas Crim. Rep., 494, it was shown Medders and Baxter were indicted for swindling a bank out of a little less than $1000 under certain false representations to the bank. The testimony in that case showed that under certain false representations they borrowed $1000 from a bank, but that the actual money was not paid to them or either of them. Instead, when the note was executed the bank, under their agreement, merely passed that amount to the credit of Baxter on its books, and that he afterwards checked out

the money by checks to various persons. The indictment therein alleged that the money so obtained was current money of the United States of America, just as alleged in this case. Therein this court, through Presiding Judge Davidson, held: "Appellant contends that neither he nor Baxter received any money of any sort, and that while the money was placed to the credit of Baxter, it created only the relation of creditor and debtor as between Baxter and the bank, and, therefore, no money was in fact obtaind. We have held in prior cases this proposition is not sound, therefore we deem it unnecessary to review that question. . . .

"Appellant depended largely upon the theory that as the indictment charged him with obtaining current money of the United States that the case was not made out; in fact, that there was a variance between the allegation in the indictment and the evidence introduced because of the fact that no money really passed between the parties, and the passing to Baxter's credit the one thousand dollars, less the one month's interest, was not sufficient to show a reception of money. As stated, we do not think there is any merit in this contention. It was as much a money transaction by passing the money to the credit of Baxter as if he in fact had received the money and placed it back in the bank, or had received the money and carried it away. It changed the possession and title to the money from the bank to Baxter. The court, therefore, did not err in refusing appellant's requested instruction covering this contention."

The Medders case was a companion case to Baxter v. State, 51 Texas Crim. Rep., 576. Substantially the same point was made in the Baxter case and expressly held against him.

In Pope v. State, 75 Texas Crim. Rep., 54, it was shown that Pope was bookkeeper and cashier of the Nobles Grocery Company with authority to draw checks and sign said company's name thereto in payment of debts due by the company; that he drew a check on one bank in Amarillo for $312.60, signing said company's name, by him. He took this check to the First State Bank where there was a draft due by said company for $107.42, which he paid, not in money but by the check for $312.60. Then he had St. Louis exchange issued for the remainder, $205.18, payable to his brother-in-law. He then endorsed his brother-in-law's name on the back of that exchange and his own name and therewith paid a debt due by him to Crossett. Pope therein contended that the evidence was insufficient to show that he embezzled the money, $205.18, but that if it showed anything it showed that he embezzled the St. Louis exchange for that amount. As a matter of fact in that case not a dollar of actual money was handled in any way by appellant or anybody in connection with the transaction. This court held that "the court (below) correctly held that it was money he embezzled and not a draft or exchange." That various steps taken by him were but steps in the one scheme to appropriate his employer's money, which he, by the confidence placed in him had under his con-

trol to the extent he used the money in the bank in the purchase of the exchange payable to his brother-in-law.

In Nesbitt v. State, 65 Texas Crim. Rep., 349, it was shown that Smith had money on deposit in the Gatesville National Bank. Nesbitt was a stockholder in the Farmers National Bank at Gatesville and he induced Smith to change banks and to give him, Nesbitt, a check on the Gatesville National Bank, which he would take the next day and deposit in Smith's name to his (Smith's) credit in the Farmers National Bank. Smith gave the check to Nesbitt for that purpose. Instead of Nesbitt depositing the check to the credit of Smith he deposited it in the Farmers National Bank to his own credit, and then gave a check therefor in payment pro tanto of his own note. The indictment therein had two counts: one charging embezzlement of said check, and the other, of the money represented thereby. The testimony showed that not a dollar of money was handled physically by appellant or anyone else. Appellant therein contended that as the indictment alleged in fact that he embezzled $60 in current money of the United States and that as the testimony showed he received no money he could not be convicted under the second count. This court held directly against Nesbitt's contention to the effect that he could be convicted therein for the embezzlement of the $60 in money although he and no other in connection therewith handled a dollar in actual money. In effect, that the transactions of depositing the check to his own credit and drawing his check in payment on his own note was an embezzlement of the money itself. See also Leach v. State, 46 Texas Crim. Rep., 507; Taylor v. State, 29 Texas Crim. App., 500. These authorities are in point and directly hold against appellant's contention.

As stated, appellant made no objections to the court's charge. Among the other requisites the court, in his main charge told the jury that it was essential that the appellant received the property (money) before they could convict him. In addition, he gave these two special charges at appellant's request, towit:

"Before you can convict the defendant in this case, you must find and believe from the evidence beyond a reasonable doubt that the State has proved the offense as charged in the indictment, towit: that the defendant, J. D. Powell, was the agent and employe of Mrs. Florence C. Field at the time he collected the note in question, and at the time he checked money out of the bank, he so collected, if you find he did check said money out of the bank and he did so at said time with the fraudulent intent to embezzle, misapply or convert said money and that said money had come into his possession by virtue of his employment or agency and that said money was lawful money of the United States of America; and unless you so find you will acquit the defendant." And

"Before you can convict the defendant you must find from the evidence beyond a reasonable doubt that at the time the defendant checked out the money in question, if you find he did check out said money, that he had the fraudulent intent to then embezzle, misapply or convert said money so checked out, if he checked out said money, and

unless you find such fraudulent intent at said time, you will acquit the defendant."

What was said by Presiding Judge Davidson in the Medders case, above quoted, is peculiarly and especially applicable in this case.  The evidence unquestionably shows that under the authorities he embezzled $373.75 of Mrs. Field in money—lawful money of the United States— and he was justly and legally convicted.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

### November 14, 1917.

PRENDERGAST, Judge.—The only two questions raised or urged by appellant when this cause was submitted are stated, discussed and correctly decided against him in the original opinion.  In that opinion the testimony of some of the witnesses on some points is quoted. Where this is done the quotations are from the record and are correct in every particular.  That opinion, also, in some instances, states what the evidence established without particularly quoting the testimony of various witnesses so-establishing.  Wherever this is done, the evidence was clearly sufficient to so establish.

In his motion for rehearing he, for the first time, contends that there is no testimony which shows that he ever drew out of the bank in small checks all of the money of Mrs. Field which he had collected for her and deposited in his own name; and that there is no testimony which shows that he ever drew out any part of said money; and he contends that from this record the court can not tell but what the entire amount is today in the bank where he originally deposited it, and that the State must show that he did check out at least more than $50 of that money at one given time in order to show that he is guilty of felony embezzlement.  And he now specially complains of this sentence in said opinion: "Between the dates of January 30th and February 27 the appellant drew out of the Archer City bank all of said money on various small checks—some of them were perhaps later than February 27th."  This sentence was not stated as being specifically sworn to by any witness nor can it be so construed.  It is a conclusion deduced from the testimony which was clearly sufficient to show it.  But whether he drew out said money on small checks or not was immaterial, as will be herein shown.

Mr. Helm, one of the makers of said $373.75 note, swore he paid that note and $197.10, the interest on all of them due February 1st, to appellant by his check for $570.85 payable to appellant, dated January 27th.  The banker, Mr. Power, swore appellant endorsed his name on that check.  Appellant was particular to prove by him that he, appellant, on January 30th, deposited that check and thereby the money called for by it, $570.85, in the bank at Archer City to his, appellant's, credit.  The check, with its endorsements, was identified and introduced in evidence.  It is copied in the record.  Appellant also had the banker

identify the bank deposit slip to him for $612.85, showing it included said deposit of $570.85 to his credit on January 30th. There is no possible doubt, from the undisputed testimony, that appellant collected said $570.85 for Mrs. Field and placed it to his own credit in said bank on January 30th, and that he has never at any time or way remitted any of it to Mrs. Field or Mr. Gillespie for her. Mrs. Field swore: "I have never received from J. D. Powell, or any other person, one cent of the principal of this note for $373.75. . . . J. D. Powell, the defendant here, received and kept and embezzled that money without my consent or my knowledge." Mr. Gillespie, Mrs. Field's general agent, swore he sent said note and a receipt for said interest to appellant for collection and remittance to him for Mrs. Field, just a short time before it became due. He swore: "He (appellant) has never at any time remitted to me the principal sum on this note of $373.75." That he received a letter from appellant dated February 17, 1915, in which he wrote: "Your favor of February 15th to hand and I beg to enclose you check for $197.10 covering interest on the Field notes and beg to say that the principal will be met in a short while. Everything in this part is looking a little bit more favorable, but it will take another year for our people to recover fully." This letter was proven up and introduced in evidence. It is copied in the record. Mr. Gillespie further swore that soon after he learned of the collection of said note, and had received said letter, "I have made (in writing) quite a number of demands on J. D. Powell for remittance of this $373.75." That he went to Archer City twice in October, 1916, to see him about the matter, but Powell was not there and he did not then see him. Upon said repeated written demands by Gillespie, he swore, appellant wrote him letters. He produced and identified three, each addressed to Gillespie, signed by Powell and from Archer City. One dated March 9, 1915, another March 12, and another March 27th. They were introduced in evidence and copied in the record. The one of the 9th was: "Money that I was expecting to arrive by today's mail did not, but as the trains have changed schedule, expect it in tomorrow, hence will be a day or two late in reaching you." The one of the 12th was: "Your favor to hand and I beg to say in reply that you know it is very humiliating not to be able to send this Field matter as you suggest, but I assure you that this was caused by no crookedness of mine, but was done by the bank taking up note that was due, from my deposits, when it was my intention to let it run for thirty days by renewal. However, I will have this money in your hands in a few days and hope that you will just rest easy for a very short time, for I intended to have it by the 10th and when the papers came it was necessary to return them to Ky. for correction, but I will have it in a few days, so please for my sake, be easy on me." The one of the 27th was: "You will confer a lasting favor on me and one that I will not only appreciate but that I will gladly reimburse you for, to wait a few days longer on me. I have deal closed by which I

will get money but the delay has been for a correction called for in title. Please do this, will oblige, yours truly."

Gillespie swore he went to Archer City again on April 3rd, 1917, saw and talked to appellant about the matter, and at the time "he (appellant) practically in every sense of the word, acknowledged to me that he had collected the principal of this $373.75 note and he made an offer of adjustment." Mr. Gillespie further swore that even up to the very time he was testifying in this case (on May 30, 1917), "he (appellant) has never reached me or sent me any money yet that he collected on this $373.75 note."

Appellant's statement in said letter of March 12th, to the effect that the reason he had not remitted the $373.75 which he had collected and deposited in said bank to his own credit, "was done by the bank taking up note that was due from my deposits," etc., *was false,* for said banker testified: "Between January 30th, the date of this deposit, and March 12th, the date of this letter, I did not charge off any note of J. D. Powell's that he owed us, out of the deposit that he had made of this Staff (S. G.) Helm's check." . . . And further, this banker testified: "On that date (January 30th) or within a few days subsequent thereto, I did not charge off any note that I know of of J. D. Powell, as against this money that he had deposited with this (Helm) check in question. His ledger account here does not show it; it shows that the charges against the account are small items down until the 27th of February, and subsequent to this date of January 30th. Yes, the account shows small checks given against the account." Again he swore: "The record of the individual ledger that I have here shows that J. D. Powell gave checks against his account, charges of small amounts, on down to February 27th, *and down further than that also.*"

All this testimony, without any sort of doubt, justifies the conclusion and deduction stated and quoted above in the original opinion of which complaint is specially made. In fact, such conclusion is not only reasonable, but is the only reasonable conclusion or deduction that could be drawn therefrom and is undoubtedly true.

But whether he drew out said money at the time and in the manner stated, or not, would make no difference. Under the law and the unquestioned facts he was undoubtedly guilty of embezzling said $373.75 of Mrs. Field's, as will now be further shown.

This court, in many cases, has held the "correct legal principle" on this point as stated for the court by Judge Henderson in Evans v. State, 40 Texas Crim. Rep., 58, as follows: "We hold this to be a correct legal principle, applicable to this character of case: that when the State has shown by competent evidence the receipt of money or other property by the carier, to be carried and disposed of in a particular way, and the State shows that it was not delivered and disposed of in the way and manner as agreed upon, and this is established beyond a reasonable doubt, if the party intrusted with the property has made some other disposition of the property, not criminal, to re-

lieve himself of conversion he must introduce proof of such disposition. Penal Code, art. 52; Bridgers v. State, 8 Texas Crim. App., 145. We would further observe in this connection that if appellant made other disposition of the property, as sending the latter by mail, without registration, to the sendee, as suggested by counsel, this proof was peculiarly within his knowledge. Caldwell v. State, 5 Texas, 18; Ashcroft v. State, 32 Texas, 109; Leonard v. State, 7 Texas Crim. App., 417. Indeed, under the facts of this case, if he sent the money to Mahoney in Mississippi it was not legally possible for the State to produce said witness at the trial, nor use his deposition. Appellant, however, was authorized to take the deposition of said witness, and prove the fact of the delivery of said letter and money. Appellant, however, appears, from his own statement made to Miss Stanley, to have cut himself off from this defense, because, when confronted by her, he told her that he had the receipt for the registered letter, but did not have it with him. We are not here talking about a prima facie case, but we are discussing the question of defendant's guilt as proved beyond a reasonable doubt, and we hold that the record authorized the jury to find that the State had made a plenary case in this regard."

In that case Miss Stanley delivered to Evans a letter containing $50 addressed to Mr. Mahoney in Mississippi, to whom she was indebted, which letter he agreed to register in the postoffice at Waco and take her the receipt therefor. She did not know whether Mahoney received the $50 or not. She did not know whether Evans sent the letter through the ordinary mail or by express. He did not register the letter. The State therein made no proof that he spent the money or made any other disposition thereof.

In Riley v. State, 32 Texas, 764, the State proved that McKeever and Van Slyke, doing an express business, in the name of the Phoenix Express Company, delivered $10,000 in money to Riley, their agent or messenger, to be transported by him from Galveston to Bryan and to be there delivered by him to Adams & Hearn. But the State did not prove what he did with the money, except that he did not deliver it to Adams & Hearn. The court held: "The reception of the money as agent or messenger of the Phoenix Express Company, or to the co-partnership of McKeever & Van Slyke, and the failure to give even a feasible account of the money of his employers which had been intrusted to his care, raise a presumption in law for its misapplication, or appropriation to his own use. And unless he could counteract this presumption by satisfactory explanations, or by facts and circumstances sufficient to create a reasonable doubt of his guilt, the jury would be warranted in finding a verdict against him upon a charge of embezzlement."

The law is correctly laid down by Mr. Branch in his 2 Ann. P. C., p. 1415, as follows: "A conviction for embezzlement will be sustained where defendant was intrusted with money or property to be disposed of in a particular way and the proof shows he did not do that,

and defendant fails to show an honest disposition thereof. Riley v. State, 32 Texas, 764; Bridgers v. State, 8 Texas Crim. App., 145; Evans v. State, 40 Texas Crim. Rep., 58; Hamer v. State, 60 Texas Crim. Rep., 341."

To the same effect see Bridgers v. State, 8 Texas Crim. App., 145; Jackson v. State, 44 Texas Crim. Rep., 265; Stephens v. State, 49 Texas Crim. Rep., 489; Schweir v. State, 50 Texas Crim. Rep., 119; Garner v. State, 51 Texas Crim. Rep., 578.

Appellant's contention that the State must prove he checked out of said deposit he made, at least more than $50 at one time, in order to show he was guilty of felony embezzlement, has been expressly and repeatedly held against him by this court. See Hamer v. State, 60 Texas Crim. Rep., 341, an opinion of this court by Judge McCord; Taylor v. State, 29 Texas Crim. App., 466, an opinion of the court by Judge Davidson; Lawshe v. State, 57 Texas Crim. Rep., 32, an opinion of the court by Judge Ramsey.

In the Hamer case Judge McCord, in the original opinion, stated Hamer's contention as follows:

Appellant seeks a reversal, "because the proof disclosed that on the date alleged in the bill of indictment, when the embezzlement occurred, the defendant embezzled less than $50 in value, and, therefore, the court should have directed the jury if they found the property to be of a less value than $50 that defendant would only be guilty of a misdemeanor, or to state it in another way, that if money is placed in the hands of an agent to be handled for his principal and that he used that money at different times, that each appropriation would constitute a separate offense, and for that reason if at any time he appropriated an amount less than $50 that defendant could not be convicted of a felony."

On this point the court, speaking through Judge McCord, held: "On the trial of the case appellant offered his account with the bank where he kept Miss Lewis' money deposited. The account simply stated 'J. P. Hamer, trustee.' He offered the account in evidence and it showed that on the 13th day of December, the date alleged in the bill of indictment as to when the appropriation occurred, that he drew out of the bank $17.25 in one check, and $25 in the other. The contention is made that the bill of indictment alleging the offense to have occurred on that date, and the account only showing that he drew out of the bank $42, that this was a separate and distinct offense, and being a misdemeanor, the court should have directed the jury that they would find defendant guilty of petit theft, and that the State was not permitted to show any other date than the 13th, because each withdrawal was a separate and distinct appropriation. We can not give our sanction to this theory. The money having been deposited by defendant in the bank, he had authority to withdraw the money, and the mere act of withdrawal could not of itself be construed into an appropriation. Suppose that defendant deposited $2000 in the bank on the 15th of October. Suppose on the next day he declares an ap-

propriation in his mind, then because he may have drawn it out by dribbles, could it be said that each withdrawal was a separate offense? Or suppose that he had the $2000 in his pocket, and determined to appropriate it, and he walked out of his office and went upon the street, and spent five or ten dollars today, fifteen tomorrow, and twenty-five the next day, would each be a single appropriation? We think the position is wholly untenable. The offense of embezzlement is constituted by the fraudulent misapplication or conversion to his own use without the consent of his principal or employer any money or property of such principal or employer which may have come into his possession or be under his care by virtue of his office, agency or employment. See article 938, Penal Code. A question similar to this came before this court in the case of Taylor v. State, 29 Texas Crim. App., 466, and the proposition contended for by appellant here was held adversely to his contention in that case. Judge Davidson, speaking for the court, says: 'Appellant urges that the facts raised the issue upon which the court should have charged the misdemeanor phase of the law of embezzlement, and that if embezzlement was proved at all it was not shown that as much as twenty dollars was converted at any one time. To this we must withhold our assent. We do not think the evidence raises this issue. The facts show that appellant obtained as agent large sums of money of his employer and converted same to his own use.' So, in this case the proof discloses that appellant received $2050. This money came into his hands on the 15th of November, 1902. One month thereafter, or on the 17th day of December, 1902, he forged a note to cover $2050 and attempted to make Miss Lewis believe that this note was genuine and that he had loaned her money was the day that the offense was alleged to have been committed. But let us look at it differently. Defendant's account at the bank shows that on October 15, the very day that this money was placed in the bank, he drew out $50; on the 16th, $100; on the 18th, $136; on the 23rd, $65; on the 29th, $60; on November 6, $61; on the 7th, $73. If it may be charged that each withdrawal of the money from the bank was a separate offense, still the fact that the defendant showed on the day alleged in the indictment he did not commit a felony, the State would be permitted to go behind that date and show that he had committed a felony at some time within the period of limitation, and the State was not limited to the day alleged in the indictment. But it is contended by appellant if the offense committed on the day alleged in the bill of indictment was a separate and distinct offense, and the State, having so proved this matter, was precluded from inquiring into other offenses, and he gives as an illustration that if a party steals several horses from different persons at different times, that you could not offer the proof of the theft of a horse from B when you had alleged the theft of a horse from A on the date fixed in the indictment. We do not think counsel is happy in his illustration. Each is a separate and distinct offense. Here it is not the withdrawal of the money in dribbles that makes the offense. It is the appropriation of the money,

and whenever the defendant appropriated it his offense was complete, and the State's case can not be successfully met by proof that after he had appropriated the money he scattered it out in small amounts and then claim that these small amounts would constitute separate offenses."

On rehearing, appellant contended that the offense was barred by limitation. On this question, as well as applicable to appellant's contention above stated, the court through Judge McCord further held: "Appellant has filed a motion for rehearing and asks that the affirmance be set aside and that the case be reversed and remanded because the facts in the case show that if there was any embezzlement in this case the same was barred by the statute of limitation. The indictment in this case was returned against appellant on the 28th day of October, A. D. 1905. It charges the offense to have occurred on the 13th day of December, 1902, and alleges the embezzlement of $2050. The proof showed that Miss Emily Lewis had the defendant to act as her agent and attorney, and that on October 15, 1902, she turned over to the defendant $2000 to handle and invest for her as her agent. About a year after she let the defendant have this money the demand was made on him for the same and he claimed that he had loaned this money on December 13, 1902, to a man by the name of John Ward, and exhibited a note for that amount, covered by a mortgage on real property. It was discovered that this note was a forgery and no such man existed and no such property was in existence as was described in the mortgage. The State, after proving the delivery of the $2000 and $60 to the defendant, proved the agency, the time of the delivery of the money, the demand was made on the defendant, his representation that he had loaned the money and the falsity of this loan. The defendant then offered testimony of the deposit of this money in the bank by him and that on the same day that he had drawn out the sum of $540 and that at separate times from that day he had drawn out various sums from $15 up to $150. He makes the contention before this court that the act of embezzlement was complete when he drew out the $540 on the day the money was deposited in the bank and that this completed the offense on that date, and that the same was barred by limitation. We have not been cited to any authority, nor have we been able to find any authority that holds that where a lump sum of money is in the hands of an agent and he uses that money for his own purposes and draws it out, or appropriates it at different times and in different amounts that each withdrawal or appropriation of the sum will constitute a separate offense; or that the intent would be fixed by his use of the money. This would simply be evidence of the appropriation of the money and the transactions would simply be continuous in their character. The statute makes it embezzlement to misapply, convert and appropriate money or property that may have come into the hands of a person as agent or attorney, or trustee, with a fraudulent intent to deprive the owner of the value of the same. This intent is gathered from the various and sundry acts that go to make up the complete conversions or misapplications which may be continuous in their character, and to

hold that each withdrawal from the bank would constitute a separate offense, would be splitting up the transaction and making various and sundry offenses out of one criminal intent. Intent is incapable of direct proof. Therefore, great latitude is necessarily allowed in proving this element of the offense. Broadly speaking, any evidence is admissible which has a tendency, even the slightest, to establish fraudulent intent on the one hand, or on the other hand to show the bona fides of the accused. See Cyc., vol. 15, 529. As said by Judge Clark in the case of Leonard v. State, 7 Texas Crim. App., 417: 'What is embezzlement? A fraudulent appropriation of the property of another, by a person to whom it has been intrusted. There is no settled mode by which this appropriation must take place, and it may occur in any one of the numberless methods which may suggest itself to the particular individual. The mode of embezzlement is simply matter of evidence, and not pleading.' The charge in this case is the embezzlement of $2050, belonging to Miss Emily Lewis, which had been intrusted to the defendant's hands. He had authority to draw this money out of the bank—all at once, or at different times. This act of withdrawal would not be a crime within itself, nor would the several withdrawals constitute different offenses. The first evidence that the State produced in this case of any act of fraudulent appropriation on the part of defendant was on the 17th day of December, 1902, when, for the first time, he makes a note purporting to be the act of one Ward for this money, and in order to deceive Miss Lewis he paid interest on that note for a year. We are constrained to hold that the act of embezzlement in this case took place on the day when he attempted to manufacture testimony to cover up the money that had been intrusted to him by Miss Lewis, and that the different acts of withdrawal of the money from the bank were but continuous acts of his that might be circumstances to develop the criminal intent. When was the criminal intent formed in this case, according to the testimony? Was it when this money was withdrawn from the bank? We do not know. But the State has fixed it as on the 17th day of December, 1902, when he attempted to conceal from Miss Lewis the whereabouts of this money which she had intrusted to him. In the Lawshe case, reported in 57 Texas Crim. Rep., 32, 121 S. W. Rep., 865, this court held that where the employment and all the transactions were continuous and the proof raised no issue of an embezzlement of less than $50, it was sufficient to charge the jury that the accused could be convicted of felony if the sum embezzled was in excess of $50 without also charging that before the jury could convict the proof must show an embezzlement at one time of a sum exceeding $50. In the Lawshe case he was agent of the Missouri, Kansas & Texas Railway Company at Sealy, and was agent for the American Express Company, and his duties intrusted him with moneys belonging to these different companies, and he was charged with the embezzlement of moneys belonging to the companies. In this case it was shown that he appropriated money at different times and the court gave them a general charge that

if he was agent of the Missouri, Kansas & Texas Railway Company, and had in his possession as their agent moneys belonging to them, and that he embezzled and fraudulently misapplied the same of the value of $50 or over they would convict. It was objected in that case that the court erred in not charging the jury that before they could convict, the proof must show an embezzlement at one time of a sum exceeding $50. This court held that it was not necessary for the court to have so charged. This court says: 'Under the evidence appellant was entitled to receive the money, and it is for its fraudulent appropriation when so received by virtue of his agency that he is amenable to law. The testimony shows that the receipts of the office ran from $1200 to $1800 per month. The aggregate shortage is shown to be a sum largely in excess of $500. The employment and all the transactions were continuous, nor was the issue of an embezzlement of less than $50 raised.' The right of the defendant in this case was continuous to draw the money out of the bank at any time and in any amounts he saw fit, and it can not be said that each withdrawal constitutes an offense and that the fraudulent intent relates to the first withdrawal alone."

The Taylor and Lawshe cases and the holding of the court therein are so fully stated by Judge McCord it is unnecessary to further state or discuss them.

The substance and effect of all the testimony clearly established that shortly after appellant deposited said money in the bank he drew all of it out; and his contention, that it can not be told from the record "but that the entire amount is today in the bank, where he originally deposited it," is certainly not true, but the reverse is true.

He collected the principal, $373.75, and the interest, $197.10, as one collection and deposited the whole in the bank as one deposit, on January 30th. His instructions, contract and duty was to remit both at once and at the same time. He then remitted nothing. Mr. Gillespie doubtless found out he had made the collection, and on February 15th wrote to him, doubtless demanding that he remit the money. On February 17th appellant answered Gillespie and sent him a check for the interest only, writing, "I beg to enclose you check for $197.10, covering interest on Field notes, and *beg to say that the principal will be met in a short while.*" This was in effect a denial that he had collected the principal, or an indirect admission that he had then appropriated it for some purpose of his own. In either contingency, or both, it was strong testimony that he had then spent or appropriated, and embezzled the principal. Gillespie again, in writing, demanded the money, and on March 9th appellant, in answer wrote to him, "Money I was expecting to arrive by today's mail did not. . . . Expect it tomorrow, hence will be a day or two late in reaching you." This was also to the same effect as his letter of February 17 that he had already appropriated and embezzled the principal. Doubtless right away Gillespie, in writing again, demanded he should send him the principal. Appellant answered that demand on March 12, saying: "Your favor

to hand. . . . You know it is very humiliating not to be able to send this Field matter," . . . but his not doing so was caused "by the bank taking up (my) note that was due, *from my deposits,*" and stating, "I will have it in a few days, so please for my sake, be easy on me." This statement by him that the bank had taken out of his said deposit a note he was due the bank, *was false,* as so testified by the banker. This letter is the strongest kind of testimony by appellant himself to the effect that he then had no money of said deposit in the bank, but had then drawn it all out, and his said false statement was the strongest kind of evidence showing his appropriation and embezzlement of said $373.75. And again, his last letter of March 27th begging for more time to remit said money, saying therein, "You will confer a lasting favor on me, and one that I will not only appreciate, but I will gladly reimburse you for, to wait a few days longer on me," therein, as he had done in a previous letter which must have also been false, that he had made another deal whereby he would get the money and then·pay the $373.75.

In the face of this testimony, and much other showing he had drawn all that money out of the bank, it is perfectly preposterous to claim that that $373.75 which he had deposited in the bank on January 30 is still *now* in said bank to his credit.

Under the law and the facts there can be no·sort of doubt of appellant's guilt, and the jury so found—couldn't legally have found otherwise.

Motion overruled.                                               *Overruled.*