Pat N. WALKER, Appellant,

v.

The STATE of Texas, Appellee.

No. 58379.

Court of Criminal Appeals of Texas,
Panel No. 1.

Nov. 14, 1979.

Rehearing En Banc Denied Jan. 9, 1980.

Clifford W. Brown, Ralph H. Brock, Lubbock, Gene L. Dulaney, Snyder, for appellant.

Joe Smith, Dist. Atty., Ricky Smith, Asst. Dist. Atty., Seminole, and Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and DOUGLAS and W. C. DAVIS, JJ.

## OPINION

DOUGLAS, Judge.

Appellant was convicted of theft over $200 and less than $10,000. Punishment was assessed by the court at three years, probated.

Walker was charged with the theft of over 6000 pounds of scrap metal owned by Erwin Young. He contends that the evidence is insufficient to support the conviction. We agree and reverse.

Gene Gandy, the sheriff of Garza County, testified that he investigated the theft complaint and found portions of the missing scrap metal on the premises of Caprock Welding, a business owned by Walker and two partners, James Kennedy and Charlie McDaniel. Gandy stated that when he asked Walker about the metal, Walker replied that he had a purchase agreement with Young concerning the metal. Gandy stated that, after informing Walker and one of Walker's employees that the metal should not be disturbed, he later found several of the missing I–beams welded into the substructure of a drilling rig owned by

Walker and Kennedy.[1] Gandy also testified that Young told him of his negotiations with Walker whereby Walker would pick up any metal he needed and pay for it later. Gandy stated that this negotiation was confirmed by Young in a later letter.

Bernard Pewitt then testified, for the State, that he was Young's employee and that he was responsible for the disposition of and maintenance of the scrap yard at Two Draw Lakes near Post. He testified that at some point in May or June of 1975 a truck belonging to Linois Oil Company stopped at the scrap pile and an employee of Walker's picked up a load of metal. This employee was later identified as Thomas Worley. After talking to Worley, Pewitt gave him an invoice for 1000 pounds of scrap, stating that it was a credit sale of that metal to Pat Walker. Worley later testified that this particular load was the last of four loads that he had picked up that day. Pewitt also testified that he had an agreement with Young that he could use any of the metal he wished and pay for it at a later date. Pewitt conceded that it was possible that Walker had negotiated similar arrangements.

Erwin Young denied ever reaching any agreement whatsoever with Pat Walker concerning the sale of the scrap, although the matter was discussed several times. He did state that Pewitt was in charge of the Two Draw Lakes scrap yard and that, although he did not give Pewitt the authority to make a credit sale, he did not tell anyone else of this limitation. He stated that Pewitt was in exclusive control of the scrap. He also testified that Pewitt gave him a copy of the invoice but that he did not remember whose name was on the invoice or what he did with it. Young admitted that he had told the grand jury, which returned Walker's indictment, that there could have been a misunderstanding between him and Pat Walker concerning the scrap.

Several other witnesses testified for the State, including Walker's two business partners. On cross-examination, each stated that he understood that they would pick up any metal they needed and pay for it later. Charles McDaniel stated that he learned of this business arrangement from Erwin Young. He testified that Young told him to keep a record of all the steel taken.

In *Reynolds v. State,* 547 S.W.2d 590 (Tex.Cr.App.1977), we stated that one of the essential elements of theft was not only that the property be taken fraudulently but that it be taken without the owner's consent.

V.T.C.A., Penal Code, Section 31.03, defines theft as follows:

"(a) A person commits an offense if, with intent to deprive the owner of property:

"* * *

"(2) he exercises control over the property, other than real property, unlawfully."

Section 31.03(b)(1) defines unlawful exercise of control over property as being without the owner's effective consent. V.T.C.A., Penal Code, Section 31.01(4), defines "effective consent" as including "consent by a person legally authorized to act for the owner."

We have historically held that various representatives of the owner may consent to a defendant's taking of the property. In *Lockett v. State,* 59 Tex.Cr.R. 531, 129 S.W. 627 (1910), we held that, where an item is owned by several joint owners, the defendant would have the right to show that he had taken the property with the consent of any of the joint owners. If successful, this would defeat the prosecution. In *Coney v. State,* 100 Tex.Cr.R. 380, 272 S.W. 197 (1925), this Court held that a defendant could successfully defend against a charge of theft by showing the consent of either the real or special owner. In *Adams v. State,* 85 Tex.Cr.R. 648, 215 S.W. 301 (1919), we held that consent by the wife of the

---

1. James Kennedy later testified that the steel used in the rig substructure was valued at $36.37, using standard metal calculation tables.

property's owner was sufficient to defeat a prosecution for theft.

In *Pearce v. State*, 50 Tex.Cr.R. 507, 98 S.W. 861 (1906), we were faced with a factually similar question. The defendant was charged with theft of a horse with ownership and possession alleged in O. M. Linn. Linn was the foreman of a ranch in Dallam County. His testimony showed that an employee, Maulding, was in charge of the ranch during Linn's absence on the day of the theft. The evidence also showed that the defendant took the horse with Maulding's consent. The defendant, therefore, could not be guilty of theft.

 The question in this case then becomes Pewitt's status as Young's employee. Mere custody of property by the employee will not operate to validate the consent given by that employee. *Washington v. State*, 408 S.W.2d 717 (Tex.Cr.App.1966). That employee must be authorized by his employer to pass or dispose of the property. See 52A C.J.S. Larceny § 22, page 443 (1968). Here, Young testified that Pewitt had the authority to dispose of and sell the scrap metal at Two Draw Lakes but he was not to sell any of the metal on credit. That limitation was not communicated to anyone. The evidence is insufficient to support the conviction.

The judgment is reversed and reformed to reflect a judgment of acquittal. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).