Kevin CHACHERE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–89–01053–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 6, 1991.
Discretionary Review Refused
Sept. 25, 1991.

Wilford Anderson, Houston, for appellant.

John B. Homes, Jr., Harris Co. Dist. Atty., Lester Blizzard, Kaye Dewalt, Asst. Harris Co. Dist. Attys., for appellee.

Before COHEN, HUGHES and MIRABAL, JJ.

OPINION

MIRABAL, Justice.

A jury found appellant guilty of felony theft. The trial court assessed punishment at five years confinement, probated, and a fine of $500.

Appellant is the owner of K.C. Customs Body Shop. William Vestal is a sergeant with the Texas Department of Public Safety, ("DPS"), Motor Vehicle Theft Division. He investigates theft rings, auto thefts, heavy equipment thefts, and insurance fraud. On August 3, 1988, he conducted a routine inventory of all vehicles located at appellant's body shop. DPS has a vehicle tracking system to record and photograph burned vehicles so that these unrepairable vehicles do not come up registered again. During the course of the inventory, Vestal observed a burned 1983 Chevrolet pickup truck. Vestal photographed the vehicle and recorded its vehicle identification number, 1GCGC24J0DS158322. Vestal stated the truck had been severely burned.

Approximately one month later, Houston Police Officer Harold Vaughn responded to a call by appellant that his truck had been stolen from Westwood Mall. Appellant described the vehicle as a white, recently painted wrecker with his name, "Chachere," displayed on each door. Vaughn prepared an offense report that listed the stolen vehicle's identification number and license plate number. The vehicle identification number from the stolen truck was the same as that from the burned truck Vestal had observed one month before.

In October 1988, Vestal learned about the alleged theft. He contacted the National Automobile Theft Bureau ("NATB") and determined the vehicle was insured by Universal Indemnity Company. Vestal contacted Universal's local representative, Al Gutierrez. Gutierrez had been investigating appellant's theft claim since mid-September.

On cross-examination, Vestal admitted he was not an expert in body repair. He could not say the truck had not been stolen, only that he could not see how, in the condition

he had seen it in previously, the truck could have been driven or repaired.

Vestal and Gutierrez opined the vehicle depicted in the photograph Vestal had taken was not repairable. Gutierrez did say, however, if someone tried to *restore* the vehicle, it could be done. He further admitted during cross-examination that the truck could be repaired.

Gutierrez said he and Vestal decided to "set up" appellant and try to cause him to say or do something that would either result in his arrest, or relieve Universal of its obligation to pay on the theft claim.

Gutierrez testified he contacted Universal and requested the company to issue a draft for $14,500. Gutierrez received the draft from Universal in November. He arranged a meeting at a local Wendy's Restaurant among himself, appellant, and Special Agent William Smith of the NATB. Vestal and two Houston police officers remained outside, awaiting a pre-arranged signal to arrest appellant.

At this meeting, appellant examined and signed a proof of loss statement that identified the vehicle by serial number and license plate number. Appellant then endorsed the insurance draft, and returned it to Agent Smith. Appellant was then arrested.

In his sole point of error, appellant claims the evidence is insufficient to support his conviction for theft of cash money. Appellant alleges there is a fatal variance between the *cash money* alleged in the indictment and the *insurance draft* admitted at trial.

In reviewing a claim of insufficiency of the evidence, an appellate court must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989).

The indictment accused appellant of unlawfully appropriating property by acquiring and otherwise exercising control over property, namely, CASH MONEY, owned by AL GUITERREZ, hereafter styled the Complainant, of the value of over seven hundred fifty dollars and under twenty thousand dollars, with the intent to deprive the Complainant of the property, and without the effective consent of the Complainant.

The State correctly points out that the courts have repeatedly held there is no variance between an indictment that alleges theft of "money" and proof at trial that establishes theft of a "check." *Jackson v. State,* 646 S.W.2d 225, 226 (Tex.Crim.App. 1983) (indictment alleged theft of money, proof showed theft of check that had been cashed by the defendant); *Kirkpatrick v. State,* 515 S.W.2d 289, 293 (Tex.Crim.App. 1974) (check was the instrumentality by which defendant received cash); *Grogen v. State,* 745 S.W.2d 450, 451 (Tex.App.— Houston [1st Dist.] 1988, no pet.) (indictment alleged theft of money, proof showed theft of checks).

We agree with the State that, in most cases, a check is considered the same as cash. This is due to the ease of negotiating the check into cash. However, the State has not provided us with any authority, and we have found none, which holds an insurance company's draft, like the one present here, is the same as a check or cash.

North Carolina National Bank, N.A. ("NCNB") was a lienholder on appellant's truck, and it too was named as a payee on the insurance draft. NCNB had to endorse the draft before it could be honored. Another condition of negotiability, stated on the face of the draft, was that clear title to the truck had to be attached to the draft, releasing title to the truck to the insurance company. Gutierrez specifically stated that, if the draft came to collection without the title, it would not have been approved.

Gutierrez further testified regarding the procedures that need to be followed when negotiating one of Universal's drafts. Appellant could not have cashed the draft alone, even with the endorsement of NCNB. The payee on the draft must take

it to a bank or other financial institution. Within 10 days, the payee's bank or institution returns the draft to the insurance company's bank for approval. The insurance company's bank must obtain permission from the insurance company to pay the draft. Payment is then made to the payee's bank, and ultimately, to the payee.

Karen Roberts is a vice-president and loan officer for NCNB, East Houston branch. She has been appellant's personal banking officer since 1984. She testified NCNB financed the purchase of appellant's wrecker truck. As of October 1988, the balance due on the truck was $20,440.09 She stated that if an insurance draft is made payable to both a customer and a bank as lienholder, it is not a negotiable instrument. The draft must be executed by the bank and the customer. The bank sends it for collection. Depending on where the draft is drawn, it takes anywhere from seven to 14 days. Roberts specifically stated such a draft is not like a check, is not cash money, and is not readily convertible into cash.

We conclude that, because of all the steps required to be completed before the draft could be negotiated, the instrument endorsed by appellant was not readily negotiable into cash. Further, the instrument had not been converted into cash or credit. Therefore, we conclude theft of the insurance draft did not constitute theft of cash money.[1]

We hold the evidence is insufficient to support appellant's conviction for theft of cash money. We sustain appellant's point of error.

We reverse the judgment and order an acquittal.

---

[1] We note that appellant also asserts the evidence is not sufficient to support his conviction for even theft of the insurance draft. Appellant claims there was no theft. We do not reach this issue.