Opinion issued June 30, 2005












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01099-CR




TERESA S. MUESHLER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 963937




O P I N I O N

          A judge convicted appellant, Teresa Mueshler, of felony aggregate theft and
sentenced her to two years’ confinement. On appeal, Mueshler contends (1) her
indictment for theft by cash money fatally varies with the evidence that she stole
money by writing checks; (2) the evidence is legally insufficient to support the
allegation that she stole cash money; (3) the evidence is legally insufficient to prove
that she lacked consent to write the checks in dispute; and (4) the evidence is
factually insufficient to prove that she lacked consent to write the checks in dispute. 
We hold that no variance exists and that the evidence is legally and factually
sufficient to sustain her conviction. We therefore affirm.
Facts
          Resource Connection, a firm owned by John Brock, employed Mueshler as its
office manager and bookkeeper. Mueshler was responsible for receiving and paying
the firm’s bills, but the checks issued to pay the bills required Brock’s signature. 
Brock frequently signed blank checks for Mueshler to pay bills while he was away
from the office. Mueshler kept a check register that included check stubs to record
the checks issued by the firm. Mueshler recorded the payee’s name and the amount
of the check on the check stub. It is uncontested that between May 2002 and
September 19, 2003, Mueshler wrote checks—totaling over $57,000—from Resource
Connection to herself and to her creditors. In these instances, Mueshler misrecorded
a valid vendor or payee on the check stub. For instance, she wrote one check to
herself for $500.00 and recorded on the check stub that the check had been made
payable to the U.S. Postal Service for postage. 
          At trial, Brock testified that he believed that Mueshler used the blank checks
he signed to pay the firm’s bills. He previously had loaned Mueshler money, but she
did not have permission to write the checks to herself or to her creditors. Brock
testified that he periodically reviewed the check stubs to inform himself of the firm’s
expenditures. Before September 2003, he did not notice anything unusual. 
          On September 22, 2003, while Mueshler was out of the office, a vendor called
and advised Brock that the firm was late in paying over $80,000 in its invoices. 
Brock immediately began investigating the unpaid invoices and noticed a discrepancy
between some of the firm’s cancelled checks and corresponding check stubs. Brock
testified that as soon as Mueshler returned to the office, he confronted her about the
problem checks. When Brock asked her if she had an explanation for these
discrepancies, Mueshler “hung her head” and responded that she did not. Mueshler
told Brock that she was sorry and that she would repay him. Later, Mueshler sent
several e-mails to Brock asking for an opportunity to correct the wrong that she had
done: “I really want to make this wrong that I have done mostly right. I know that it
will never be right because I betrayed you and am deeply sorry for that.” 
          Brock testified that he conducted an audit of the firm’s checking account by
comparing the check stubs, cancelled checks and bank statements. Brock testified
that he determined that Mueshler had written over 100 unauthorized checks to herself
and her creditors. He discovered that on his copy of several of the cancelled checks,
the name of the payee had been whited-out. Some of these checks had legitimate
vendors—matching the check stubs—written over the white-out. Brock also
discovered that many of the problem checks that Mueshler wrote to herself
approximated the amount of her paycheck, so if he looked through the cancelled
checks, they would not be conspicuous.
          At trial, Mueshler conceded that she wrote all of the checks in dispute. She
testified that she thought she had authority to write these checks because Brock
previously had given her permission to borrow money from the firm to pay some of
her personal needs—legal fees in fighting for the custody of her children, a down
payment and closing costs for purchasing a house, and a doctor bill. Mueshler
testified that the check stubs did not match the cancelled checks because Brock
instructed her to record false information on the check stubs for tax purposes. Cash
          Mueshler’s first two issues relate to the indictment’s allegation that she
committed theft of cash money instead of theft of checks. In her first issue, Mueshler
contends that because she was charged with theft of cash, the indictment fatally varies
from the proof at trial. In her second issue, Mueshler contends that the evidence is
legally insufficient to sustain a conviction of theft by cash. 
A. Fatal Variance 
          Mueshler contends a variance exists between the allegations in the
indictment—that she committed theft of cash money—and the evidence at trial—that
she wrote the problem checks to herself and to her creditors. She further contends
that the alleged variance is fatal and thus violates her Fifth Amendment right to due
process. 
          A variance occurs if a discrepancy exists between the allegation in the
 indictment and the proof presented at trial. Gollihar v. State, 46 S.W.3d 243, 246
(Tex. Crim. App. 2001). In such cases, the State has proven the defendant guilty of
a crime, but proved the commission of the crime in a manner that varies from the
allegations in the indictment. Such a variance may render the evidence insufficient
to sustain the conviction. Id. at 247. Only a material variance, however, renders the
evidence insufficient and requires reversal. Id. at 257.
           Here, the indictment states: “TERESA S. MUESHLER . . . on or about May
30, 2002 CONTINUING THROUGH SEPTEMBER 19, 2003, did then and there
unlawfully, pursuant to one scheme and continuing course of conduct, appropriate,
by acquiring and otherwise exercising control over property, namely, CASH
MONEY, owned by JOHN BROCK, hereinafter the Complainant, with the intent to
deprive the Complainant of the property and the total value of the property
appropriated was over twenty thousand dollars and under one hundred thousand
dollars.” The evidence at trial proves that Mueshler wrote checks to herself and her
creditors, using funds from Resource Connection’s account. 
          Our courts have long held that there is no variance between an indictment
alleging conversion of cash and proof showing conversion of a check. Kirkpatrick
v. State, 515 S.W.2d 289, 293 (Tex. Crim. App. 1974). In Kirkpatrick, the indictment
alleged an employee converted $3.00; the evidence proved he converted $1,594 in
checks. Id. at 291–92. The court held no variance exists because money was
obtained “by a false pretext, through the instrumentality of the check.” Id. at 293
(emphasis added) (citing Rick v. State, 207 S.W.2d 629, 630 (Tex. Crim. App. 1947)); 
see also Grogen v. State, 745 S.W.2d 450 (Tex. App.—Houston [1st Dist.] 1988, no
pet.) (“The Court of Criminal Appeals has repeatedly held that there is no variance
between an indictment that alleges theft of ‘money’ and proof at trial that establishes
theft of a ‘check.’”); Powell v. State, 198 S.W. 317, 320–21 (Tex. Crim. App. 1917)
(holding no fatal variance between indictment that defendant embezzled money and
proof that he took a check—citing to Pope v. State, 170 S.W. 152 (Tex. Crim. App.
1914) for statement that theft of money may occur when “not a dollar of actual money
[is] handled in any way” by defendant). 
          Here, Mueshler stole cash that Brock had in the firm’s checking account. 
Mueshler used the checks as an instrumentality to misappropriate the money to
herself and her creditors. We thus hold that there is no variance—hence no fatal
variance—between the allegations in the indictment and the proof at trial.
B. Legally Insufficient Evidence
          In her second issue, Mueshler contends that evidence that she committed theft
by writing checks is legally insufficient to prove the allegations in the indictment that
she committed theft of “cash money.” We review a claim that the evidence is legally
insufficient by viewing “all of the evidence in the light most favorable to the verdict
and then determin[ing] whether a rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.” Escamilla v. State, 143 S.W.3d
814, 817 (Tex. Crim. App. 2004) (citing Jackson v. Virginia, 443 U.S. 307, 99 S. Ct.
2781 (1979)), cert. denied, __ U.S. __, 125 S.Ct. 1697 (2005). 
          Here, we have held that, in connection with a fatal variance claim, checks are
considered cash money. Our courts similarly have held that evidence that checks
were used to obtain money is legally sufficient proof that the defendant committed
theft of cash money. See Jackson v. State, 646 S.W.2d 225, 226 (Tex. Crim. App.
1983) (overruling challenge to sufficiency of evidence in theft conviction, stating
“use of a check does not render the evidence insufficient”); Rick, 207 S.W.2d at
629–30 (holding evidence of embezzled check sufficient to sustain conviction of
embezzled money because check was manner in which defendant took money). 
          Mueshler cites Orr v. State, 836 S.W.2d 315, 319 (Tex. App.—Austin 1992,
no pet.), to contend that checks may be considered cash only if there is proof at trial
that the payee negotiated the checks. In Orr, a defendant was charged with theft of
cash money in connection with money orders he received for payment of his
fraudulently-induced sale of oil wells. Id. at 316–17. The court held that because a
money order is not cash, a conviction of cash money must include evidence that it
was negotiated—that the defendant in fact used it as an instrumentality to obtain cash. 
Id. at 317–19. Mueshler contends that the State failed to prove that she cashed the
unauthorized checks or otherwise exercised control over the cash. 
          Evidence exists that Mueshler tendered the checks to the payee for negotiation,
or in the cases in which she is the payee, negotiated them herself. First, Brock
testified that exhibits 2–102 were canceled checks which Mueshler wrote to herself
and her creditors, without his consent. A cancelled check, by definition, is one that
has been negotiated. See Black’s Law Dictionary 252 (8th ed. 2004) (cancelled
check is one “bearing a notation that it has been paid by the bank on which it was
drawn.”). Second, the front of these checks indicates presentment to the bank and
cancellation. Third, it is uncontested that after Brock confronted her, Mueshler
offered to repay him for the problem checks. There would be no need to “repay”
Brock unless the checks were negotiated and cash taken from the firm’s checking
account.
          Mueshler next cites to our opinion in Chachere v. State, 811 S.W.2d 135 (Tex.
App.—Houston [1st Dist.] 1991, pet. ref’d), contending that a check is not always
considered cash. In Chachere, we held that theft of an insurance draft did not
constitute theft of cash money. Id. at 137. In so holding, we recognized that in most
theft cases, theft of a check is the same as theft of cash: 
We agree with the State that, in most cases, a check is considered the
same as cash. This is due to the ease of negotiating the check into cash.

Id. at 136. The insurance draft in Chachere was not considered cash because it was
“not like a check”—(1) the draft had a lienholder listed as a second payee; (2) the
draft was not considered by the bank to be a negotiable instrument; (3) the draft
needed to have a copy of the vehicle’s title attached to it before it would be approved;
and (4) the draft “had not been converted into cash or credit.” Id. The obstacles in
negotiating the insurance check in Chachere are not present here. Moreover, contrary
to the facts in Chachere, here evidence exists that Mueshler converted the
unauthorized checks into cash and credit. 
          The State introduced evidence that the unauthorized checks written by
Mueshler were negotiated—such that the bank used cash from the firm’s checking
account to pay them. We thus hold that there is legally sufficient evidence to sustain
Mueshler’s conviction of theft of cash money. 
Consent
          In her third and fourth issues, Mueshler challenges the legal and factual
sufficiency of the evidence that she lacked consent to write the checks to herself and
her creditors. She claims to have had consent for her actions because (1) Brock in the
past allowed her to use the firm’s funds for her personal needs; (2) Brock never
indicated his consent to use the firm’s funds for her personal use was limited; and
(3) Brock never expressly stated that she did not have permission to use the firm’s
funds for her personal use. 
A. Legal Sufficiency
          “In a legal sufficiency review, we view all of the evidence in the light most
favorable to the verdict and then determine whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.” Escamilla, 143
S.W.3d at 817 (citing Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979)). 
Although our analysis considers all evidence presented at trial, we may not re-weigh
the evidence and substitute our judgment for that of the fact-finders. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). 
          Mueshler was convicted of aggregate theft. A person commits theft if she
unlawfully appropriates property with intent to deprive the owner of it. Tex. Pen.
Code Ann. § 31.03(a) (Vernon Supp. 2004–2005). An unlawful appropriation
includes one that is without the owner’s effective consent. Tex. Pen. Code
Ann. § 31.03(b)(1) (Vernon Supp. 2004–2005). 
          Mueshler cites to Walker v. State, 591 S.W.2d 493 (Tex. Crim. App. 1979), for
the proposition that the State is required to prove that Brock expressly communicated
to her that she could not write the checks in dispute. In Walker, the complainant
authorized an employee to negotiate sales but prohibited him from making credit
sales. Id. at 494. The complainant did not communicate this limitation to anyone
else. Id. The employee arranged a sale on credit with the defendant in which the
defendant took complainant’s property without first paying for it. Id. at 493–94. The
Texas Court of Criminal Appeals determined that the defendant acted with consent
because the defendant had not been informed of the restrictions that the complainant
intended to place on the sale of his goods. Id. at 494–95.
          Here, Brock testified that he did not give Mueshler consent to write the checks
in dispute. He testified that, although he loaned Mueshler money on occasion, she
never had blanket authority to use the firm’s funds for her personal needs. 
Mueshler’s actions of concealment in writing the checks—placing false payee names
on the check stubs, redacting and changing the names of the payee on some of the
checks, and writing checks to herself in amounts generally equivalent to her
paycheck—is some evidence that she knew she lacked authority to write the checks. 
 When Brock confronted her, Mueshler acted consistently with someone who knew
that consent to write the checks was lacking—she hung her head, she stated she had
no explanation for the discrepancy, and she later wrote an e-mail admitting that what
she did was wrong. 
          Reviewing the evidence set forth above in the light most favorable to the
verdict, we conclude that the evidence is legally sufficient for a reasonable fact finder
to determine that Mueshler lacked consent to write the checks. See Gill v. State, 670
S.W.2d 758, 760 (Tex. App.—Corpus Christi 1984, pet. ref’d) (holding that when it
was determined that defendant never was authorized to take property, then defendant
need not be informed on limitations in using this property). 
B. Factual Sufficiency
          “In a factual sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met.” Escamilla,
143 S.W.3d at 817 (citing Zuniga v. State, 144 S.W.3d 477, 483 (Tex. Crim. App.
2004)). In a factual sufficiency review, we may not substitute our own judgment for
that of the fact finder. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). 
Unless the available record reveals that a different result is appropriate, we defer to
the fact finder’s determination concerning the weight to place upon conflicting
testimony, because resolution of facts often turns on evaluation of credibility and
demeanor. See Johnson v. State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000). 
          Mueshler contends she proved that she had consent to write the checks in
dispute. She testified that she understood she could use the firm’s funds for her
personal use and that she would re-pay Brock. Mueshler states that she developed
this understanding because Brock had assisted her in the past with loans from the
firm’s funds. She testified that she wrote false information on the check stubs
because Brock instructed her to do so for tax purposes. Mueshler characterized her
post-confrontation e-mails to Brock as expressions of exasperation after losing her
job and of a resolution that she would repay Brock for his past assistance. At trial,
she presented witnesses who testified that she was a trustworthy person and that
Brock was honest only when it suited him. 
          As set forth above, Brock’s testimony contradicts that of Mueshler’s. 
Moreover, additional evidence indicates that Mueshler believed she lacked consent
to write the problem checks. Given the verdict, the trial court evidently believed
Brock’s testimony over Mueshler’s. We will not substitute our judgment for that of
the fact finder’s. See Zuniga, 144 S.W.3d at 481–82. After examining all of the
evidence neutrally, we hold that the proof of Mueshler’s lack of consent was not so
obviously weak as to undermine confidence in the trial court’s determination of guilt;
nor was the contrary evidence so strong that the beyond-a-reasonable-doubt standard
could not have been met. See Escamilla, 143 S.W.3d at 817.
Conclusion
          We conclude (1) the indictment alleging theft of cash money does not fatally
vary from the evidence at trial that Mueshler committed theft by writing checks to
herself and to her creditors; and (2) the evidence is factually and legally sufficient to
sustain the conviction. We therefore affirm the judgment. 



                                                             Jane Bland
                                                             Justice
 
Panel consists of Justices Nuchia, Keyes, and Bland.
Publish. Tex. R. App. P. 47.2(b).