Teresa S. MUESHLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–04–01099–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 30, 2005.

Rehearing Overruled Aug. 1, 2005.

Discretionary Review Refused
Dec. 7, 2005.

Texas on frequent occasions to transport M.N.G. to and from Louisiana.

Emily Munoz–Detoto, Muniz Law Office, Houston, TX, for Appellant.

Carmen Castillo Mitchell, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and BLAND.

## OPINION

JANE BLAND, Justice.

A judge convicted appellant, Teresa Mueshler, of felony aggregate theft and sentenced her to two years' confinement. On appeal, Mueshler contends (1) her indictment for theft by cash money fatally varies with the evidence that she stole money by writing checks; (2) the evidence is legally insufficient to support the allegation that she stole cash money; (3) the evidence is legally insufficient to prove that she lacked consent to write the checks in dispute; and (4) the evidence is factually insufficient to prove that she lacked consent to write the checks in dispute. We hold that no variance exists and that the evidence is legally and factually sufficient to sustain her conviction. We therefore affirm.

### Facts

Resource Connection, a firm owned by John Brock, employed Mueshler as its office manager and bookkeeper. Mueshler was responsible for receiving and paying the firm's bills, but the checks issued to pay the bills required Brock's signature. Brock frequently signed blank checks for Mueshler to pay bills while he was away from the office. Mueshler kept a check register that included check stubs to record the checks issued by the firm. Mueshler recorded the payee's name and the amount of the check on the check stub. It is uncontested that between May 2002 and September 19, 2003, Mueshler wrote checks—totaling over $57,000—from Resource Connection to herself and to her creditors. In these instances, Mueshler misrecorded a valid vendor or payee on

the check stub. For instance, she wrote one check to herself for $500.00 and recorded on the check stub that the check had been made payable to the U.S. Postal Service for postage.

At trial, Brock testified that he believed that Mueshler used the blank checks he signed to pay the firm's bills. He previously had loaned Mueshler money, but she did not have permission to write the checks to herself or to her creditors. Brock testified that he periodically reviewed the check stubs to inform himself of the firm's expenditures. Before September 2003, he did not notice anything unusual.

On September 22, 2003, while Mueshler was out of the office, a vendor called and advised Brock that the firm was late in paying over $80,000 in its invoices. Brock immediately began investigating the unpaid invoices and noticed a discrepancy between some of the firm's cancelled checks and corresponding check stubs. Brock testified that as soon as Mueshler returned to the office, he confronted her about the problem checks. When Brock asked her if she had an explanation for these discrepancies, Mueshler "hung her head" and responded that she did not. Mueshler told Brock that she was sorry and that she would repay him. Later, Mueshler sent several e-mails to Brock asking for an opportunity to correct the wrong that she had done: "I really want to make this wrong that I have done mostly right. I know that it will never be right because I betrayed you and am deeply sorry for that."

Brock testified that he conducted an audit of the firm's checking account by comparing the check stubs, cancelled checks and bank statements. Brock testified that he determined that Mueshler had written over 100 unauthorized checks to herself and her creditors. He discovered that on his copy of several of the cancelled checks, the name of the payee had been whited-out. Some of these checks had legitimate vendors—matching the check stubs—written over the white-out. Brock also discovered that many of the problem checks that Mueshler wrote to herself approximated the amount of her paycheck, so if he looked through the cancelled checks, they would not be conspicuous.

At trial, Mueshler conceded that she wrote all of the checks in dispute. She testified that she thought she had authority to write these checks because Brock previously had given her permission to borrow money from the firm to pay some of her personal needs—legal fees in fighting for the custody of her children, a down payment and closing costs for purchasing a house, and a doctor bill. Mueshler testified that the check stubs did not match the cancelled checks because Brock instructed her to record false information on the check stubs for tax purposes.

### Cash

Mueshler's first two issues relate to the indictment's allegation that she committed theft of cash money instead of theft of checks. In her first issue, Mueshler contends that because she was charged with theft of cash, the indictment fatally varies from the proof at trial. In her second issue, Mueshler contends that the evidence is legally insufficient to sustain a conviction of theft by cash.

### A. Fatal Variance

■ Mueshler contends a variance exists between the allegations in the indictment—that she committed theft of cash money—and the evidence at trial—that she wrote the problem checks to herself and to her creditors. She further contends that the alleged variance is fatal and

thus violates her Fifth Amendment right to due process.

■ A variance occurs if a discrepancy exists between the allegation in the indictment and the proof presented at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim.App.2001). In such cases, the State has proven the defendant guilty of a crime, but proved the commission of the crime in a manner that varies from the allegations in the indictment. Such a variance may render the evidence insufficient to sustain the conviction. *Id.* at 247. Only a material variance, however, renders the evidence insufficient and requires reversal. *Id.* at 257.

Here, the indictment states: "**TERESA S. MUESHLER** ... on or about **May 30, 2002 CONTINUING THROUGH SEPTEMBER 19, 2003,** did then and there unlawfully, pursuant to one scheme and continuing course of conduct, appropriate, by acquiring and otherwise exercising control over property, namely, CASH MONEY, owned by JOHN BROCK, hereinafter the Complainant, with the intent to deprive the Complainant of the property and the total value of the property appropriated was over twenty thousand dollars and under one hundred thousand dollars." The evidence at trial proves that Mueshler wrote checks to herself and her creditors, using funds from Resource Connection's account.

Our courts have long held that there is no variance between an indictment alleging conversion of cash and proof showing conversion of a check. *Kirkpatrick v. State*, 515 S.W.2d 289, 293 (Tex.Crim.App.1974). In *Kirkpatrick*, the indictment alleged an employee converted $3.00; the evidence proved he converted $1,594 in checks. *Id.* at 291–92. The court held no variance exists because money was obtained "by a false pretext, *through the instrumentality of the check." Id.* at 293 (emphasis added)

(citing *Rick v. State*, 151 Tex.Crim. 426, 207 S.W.2d 629, 630 (1947)); *see also Grogen v. State*, 745 S.W.2d 450 (Tex.App.-Houston [1st Dist.] 1988, no pet.) ("The Court of Criminal Appeals has repeatedly held that there is *no* variance between an indictment that alleges theft of 'money' and proof at trial that establishes theft of a 'check.' "); *Powell v. State*, 82 Tex.Crim. 163, 198 S.W. 317, 320–21 (1917) (holding no fatal variance between indictment that defendant embezzled money and proof that he took a check—citing to *Pope v. State*, 75 Tex.Crim. 54, 170 S.W. 152 (1914) for statement that theft of money may occur when "not a dollar of actual money [is] handled in any way" by defendant).

Here, Mueshler stole cash that Brock had in the firm's checking account. Mueshler used the checks as an instrumentality to misappropriate the money to herself and her creditors. We thus hold that there is no variance—hence no fatal variance—between the allegations in the indictment and the proof at trial.

## B. Legally Insufficient Evidence

■ In her second issue, Mueshler contends that evidence that she committed theft by writing checks is legally insufficient to prove the allegations in the indictment that she committed theft of "cash money." We review a claim that the evidence is legally insufficient by viewing "all of the evidence in the light most favorable to the verdict and then determin[ing] whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex.Crim.App. 2004) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)), *cert. denied*, —— U.S. ——, 125 S.Ct. 1697, 161 L.Ed.2d 528 (2005).

Here, we have held that, in connection with a fatal variance claim, checks are considered cash money. Our courts similarly have held that evidence that checks were used to obtain money is legally sufficient proof that the defendant committed theft of cash money. *See Jackson v. State,* 646 S.W.2d 225, 226 (Tex.Crim.App.1983) (overruling challenge to sufficiency of evidence in theft conviction, stating "use of a check does not render the evidence insufficient"); *Rick,* 207 S.W.2d at 629–30 (holding evidence of embezzled check sufficient to sustain conviction of embezzled money because check was manner in which defendant took money).

Mueshler cites *Orr v. State,* 836 S.W.2d 315, 319 (Tex.App.-Austin 1992, no pet.), to contend that checks may be considered cash only if there is proof at trial that the payee negotiated the checks. In *Orr,* a defendant was charged with theft of cash money in connection with money orders he received for payment of his fraudulently-induced sale of oil wells. *Id.* at 316–17. The court held that because a money order is not cash, a conviction of cash money must include evidence that it was negotiated—that the defendant in fact used it as an instrumentality to obtain cash. *Id.* at 317–19. Mueshler contends that the State failed to prove that she cashed the unauthorized checks or otherwise exercised control over the cash.

Evidence exists that Mueshler tendered the checks to the payee for negotiation, or in the cases in which she is the payee, negotiated them herself. First, Brock testified that exhibits 2–102 were canceled checks which Mueshler wrote to herself and her creditors, without his consent. A cancelled check, by definition, is one that has been negotiated. *See* BLACK'S LAW DICTIONARY 252 (8th ed.2004) (cancelled check is one "bearing a notation that it has been paid by the bank on which it was drawn."). Second, the front of these checks indicates presentment to the bank and cancellation. Third, it is uncontested that after Brock confronted her, Mueshler offered to repay him for the problem checks. There would be no need to "repay" Brock unless the checks were negotiated and cash taken from the firm's checking account.

Mueshler next cites to our opinion in *Chachere v. State,* 811 S.W.2d 135 (Tex. App.-Houston [1st Dist.] 1991, pet. ref'd), contending that a check is not always considered cash. In *Chachere,* we held that theft of an insurance draft did not constitute theft of cash money. *Id.* at 137. In so holding, we recognized that *in most theft cases,* theft of a check is the same as theft of cash:

> We agree with the State that, in most cases, a check is considered the same as cash. This is due to the ease of negotiating the check into cash.

*Id.* at 136. The insurance draft in *Chachere* was not considered cash because it was "not like a check"—(1) the draft had a lienholder listed as a second payee; (2) the draft was not considered by the bank to be a negotiable instrument; (3) the draft needed to have a copy of the vehicle's title attached to it before it would be approved; and (4) the draft "had not been converted into cash or credit." *Id.* The obstacles in negotiating the insurance check in *Chachere* are not present here. Moreover, contrary to the facts in *Chachere,* here evidence exists that Mueshler converted the unauthorized checks into cash and credit.

The State introduced evidence that the unauthorized checks written by Mueshler were negotiated—such that the bank used cash from the firm's checking account to pay them. We thus hold that there is legally sufficient evidence to sustain Mueshler's conviction of theft of cash money.

### Consent

■ In her third and fourth issues, Mueshler challenges the legal and factual sufficiency of the evidence that she lacked consent to write the checks to herself and her creditors. She claims to have had consent for her actions because (1) Brock in the past allowed her to use the firm's funds for her personal needs; (2) Brock never indicated his consent to use the firm's funds for her personal use was limited; and (3) Brock never expressly stated that she did not have permission to use the firm's funds for her personal use.

#### A. Legal Sufficiency

"In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Escamilla,* 143 S.W.3d at 817 (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Although our analysis considers all evidence presented at trial, we may not re-weigh the evidence and substitute our judgment for that of the fact-finders. *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App.2000).

Mueshler was convicted of aggregate theft. A person commits theft if she unlawfully appropriates property with intent to deprive the owner of it. TEX. PEN.CODE ANN. § 31.03(a) (Vernon Supp.2004–2005). An unlawful appropriation includes one that is without the owner's effective consent. TEX. PEN.CODE ANN. § 31.03(b)(1) (Vernon Supp.2004–2005).

Mueshler cites to *Walker v. State,* 591 S.W.2d 493 (Tex.Crim.App.1979), for the proposition that the State is required to prove that Brock expressly communicated to her that she could not write the checks in dispute. In *Walker,* the complainant authorized an employee to negotiate sales but prohibited him from making credit sales. *Id.* at 494. The complainant did not communicate this limitation to anyone else. *Id.* The employee arranged a sale on credit with the defendant in which the defendant took complainant's property without first paying for it. *Id.* at 493–94. The Texas Court of Criminal Appeals determined that the defendant acted with consent because the defendant had not been informed of the restrictions that the complainant intended to place on the sale of his goods. *Id.* at 494–95.

Here, Brock testified that he did not give Mueshler consent to write the checks in dispute. He testified that, although he loaned Mueshler money on occasion, she never had blanket authority to use the firm's funds for her personal needs. Mueshler's actions of concealment in writing the checks—placing false payee names on the check stubs, redacting and changing the names of the payee on some of the checks, and writing checks to herself in amounts generally equivalent to her paycheck—is some evidence that she knew she lacked authority to write the checks. When Brock confronted her, Mueshler acted consistently with someone who knew that consent to write the checks was lacking—she hung her head, she stated she had no explanation for the discrepancy, and she later wrote an e-mail admitting that what she did was wrong.

Reviewing the evidence set forth above in the light most favorable to the verdict, we conclude that the evidence is legally sufficient for a reasonable fact finder to determine that Mueshler lacked consent to write the checks. *See Gill v. State,* 670 S.W.2d 758, 760 (Tex.App.-Corpus Christi 1984, pet. ref'd) (holding that when it was determined that defendant never was authorized to take property, then defendant need not be informed on limitations in using this property).

*B. Factual Sufficiency*

 "In a factual sufficiency review, we view all of the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met." *Escamilla*, 143 S.W.3d at 817 (citing *Zuniga v. State*, 144 S.W.3d 477, 483 (Tex.Crim.App. 2004)). In a factual sufficiency review, we may not substitute our own judgment for that of the fact finder. *Jones v. State*, 944 S.W.2d 642, 648 (Tex.Crim.App.1996). Unless the available record reveals that a different result is appropriate, we defer to the fact finder's determination concerning the weight to place upon conflicting testimony, because resolution of facts often turns on evaluation of credibility and demeanor. *See Johnson v. State*, 23 S.W.3d 1, 8 (Tex.Crim.App.2000).

Mueshler contends she proved that she had consent to write the checks in dispute. She testified that she understood she could use the firm's funds for her personal use and that she would re-pay Brock. Mueshler states that she developed this understanding because Brock had assisted her in the past with loans from the firm's funds. She testified that she wrote false information on the check stubs because Brock instructed her to do so for tax purposes. Mueshler characterized her post-confrontation e-mails to Brock as expressions of exasperation after losing her job and of a resolution that she would repay Brock for his past assistance. At trial, she presented witnesses who testified that she was a trustworthy person and that Brock was honest only when it suited him.

As set forth above, Brock's testimony contradicts that of Mueshler's. Moreover, additional evidence indicates that Mueshler believed she lacked consent to write the problem checks. Given the verdict, the trial court evidently believed Brock's testimony over Mueshler's. We will not substitute our judgment for that of the fact finder's. *See Zuniga*, 144 S.W.3d at 481–82. After examining all of the evidence neutrally, we hold that the proof of Mueshler's lack of consent was not so obviously weak as to undermine confidence in the trial court's determination of guilt; nor was the contrary evidence so strong that the beyond-a-reasonable-doubt standard could not have been met. *See Escamilla*, 143 S.W.3d at 817.

### Conclusion

We conclude (1) the indictment alleging theft of cash money does not fatally vary from the evidence at trial that Mueshler committed theft by writing checks to herself and to her creditors; and (2) the evidence is factually and legally sufficient to sustain the conviction. We therefore affirm the judgment.