**Opinion filed May 16, 2019**



## In The

# Eleventh Court of Appeals

_____

## No. 11-17-00129-CR

_____

## PEDRO HERNANDEZ JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 39th District Court**

**Haskell County, Texas**

**Trial Court Cause No. 6888**

### M E M O R A N D U M   O P I N I O N

Appellant, Pedro Hernandez Jr., appeals his conviction for the second-degree felony offense of burglary of a habitation.  In two issues on appeal, Appellant argues that the evidence was insufficient to convict him of burglary of a habitation.  We affirm.

### Background Facts

On the morning of the alleged offense, Chief Chris Mendoza of the Munday Police Department received information that Appellant was in front of a local

business. Chief Mendoza, along with another Munday police officer, went to the local business and questioned Appellant about his purpose for being there. Appellant told Chief Mendoza, among other things, that he needed a ride to the Rochester/Rule area because "he and his girlfriend got in a fight" and he thought that "someone was going to come beat him up." Chief Mendoza agreed to give Appellant a ride, but he clarified that he could only drive Appellant to Knox City. At trial, Chief Mendoza testified that Appellant seemed confused during their conversation.

Chief Mendoza dropped Appellant off in Knox City with an officer from the Knox County Sheriff's Department, Chief Deputy Jose Rojo. Chief Deputy Rojo drove Appellant to Rochester. Chief Deputy Rojo testified that, during the drive, Appellant was "incoherent" and was concerned that "people . . . were going to kill him." Chief Deputy Rojo dropped Appellant off at a residence where Appellant used to live. Appellant immediately ran from Chief Deputy Rojo's vehicle up to the home.

When Appellant entered the home, Appellant brandished a knife and knocked over various pieces of furniture and personal property. The residents of the home instructed Appellant to leave. Appellant jumped through a window and fled to another home nearby, which was occupied by Brian Keith Amos and his two daughters, Brittany and Tyreonna Amos.

Tyreonna was outside the home at the time Appellant approached. Appellant ran up to Tyreonna and told her that "someone was shooting at him" and asked if he could come inside. Tyreonna told Appellant that she needed to ask her father first. When she tried to enter her home through the back door, it was locked, so Appellant broke down the door and both he and Tyreonna entered. Brian testified that he did not give Appellant permission to enter his home.

2

Brian, upon Appellant's entrance to the home, wrestled Appellant to the floor and restrained him. Brittany called 9-1-1 on Brian's cell phone. Brian held Appellant for twenty-five to thirty minutes as they waited for the police. According to Brian, Appellant asked to be let go "because they're after [him]." Brian testified that Appellant told him: "If you can just let me make a call, I can get somebody to come and I can leave."

Brian permitted Appellant to make a phone call. Brian testified that Brittany handed Appellant the cell phone. Appellant called 9-1-1. At some point after the call, Appellant "bolted out the door," ran into the fence, jumped over the fence, and ran to another home nearby. Although Brian had told a police dispatcher that Appellant had "busted" through his door, Brian testified at trial that he had instead opened the door to allow Appellant to leave. In any event, Appellant ran off with Brian's cell phone; neither Brian nor anyone in his family gave Appellant consent to take his cell phone.

Appellant broke into another home. When Chief Deputy Kenny Barnett of the Haskell County Sheriff's Department arrived on scene, Appellant exited that home, approached Chief Deputy Barnett, and told him that "people were after him." Chief Deputy Barnett described Appellant as hysterical and believed that Appellant was under the influence of a controlled substance. Deputy Christopher Keith of the Haskell County Sheriff's Department also arrived on scene. He searched the most recent home that Appellant had broken into. Deputy Keith found Brian's cell phone outside a window that he believed Appellant had broken through.

None of the witnesses observed anyone following Appellant. Chief Deputy Barnett testified that, in his opinion, Appellant "actually believed somebody was after him."

After the jury heard the evidence, it found Appellant guilty of burglary of a habitation. The trial court assessed punishment and sentenced Appellant to

3

confinement for fifty years in the Institutional Division of the Texas Department of Criminal Justice.  This appeal followed.

*Analysis*

In two issues, Appellant challenges the sufficiency of the evidence supporting his conviction for burglary of a habitation.  In his first issue, Appellant argues that the evidence is insufficient to support his conviction because there was no evidence that he intended to, or that he did, commit theft of Brian's cell phone.  In his second issue, he claims that the trial court erred when it denied his motion for directed verdict because the evidence was insufficient to prove that he intended to, or that he did, commit theft of Brian's cell phone.

We review a challenge to the trial court's denial of a motion for a directed verdict as a challenge to the sufficiency of the evidence.  *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996).  The standard of review for sufficiency of the evidence is whether any rational trier of fact could have found Appellant guilty beyond a reasonable doubt of the charged offense.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see also Fernandez v. State*, 479 S.W.3d 835, 837–38 (Tex. Crim. App. 2016).  We review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).  The trier of fact may believe all, some, or none of a witness's testimony because the trier of fact is the sole judge of the weight and credibility of the witnesses.  *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd).  We defer to the trier of fact's resolution of any conflicting inferences raised by the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict.  *Jackson*, 443 U.S. at 326; *Zuniga v. State*, 551 S.W.3d 729, 733–34 (Tex.

4

Crim. App. 2018); *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Appellant was charged by indictment with burglary of a habitation. TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2019). The indictment stated that Appellant "did then and there, intentionally or knowingly enter a habitation without the effective consent of Brian Amos, the owner thereof, and attempted to commit or committed theft of property, to-wit: a cell phone, owned by Brian Amos."

As relevant in this case, the elements of burglary of a habitation are as follows: (1) a person, (2) intentionally or knowingly, (3) enters a habitation, (4) without the effective consent of the owner, and (5) commits or attempts to commit a felony, theft, or assault. *Id.*; *Davila v. State*, 547 S.W.2d 606, 608 (Tex. Crim. App. 1977); *see Rivera v. State*, 808 S.W.2d 80, 92 (Tex. Crim. App. 1991) (State is not required to prove that Appellant intended to commit theft when he entered the habitation). Appellant only contests the sufficiency of the evidence with respect to the fifth element.

A theft is committed when a person "unlawfully appropriates property with intent to deprive the owner of property." PENAL § 31.03(a). Appropriation of property is unlawful if committed without the owner's effective consent. *Id.* § 31.03(b)(1); *see id.* § 31.01(4)(B) ("appropriate" means "to acquire or otherwise exercise control over property other than real property"). Appropriation of property is "without the owner's effective consent" if it is without his "assent in fact." *Id.* § 31.03(b)(1), § 1.07(a)(11) (West Supp 2018); *Thomas v. State*, 753 S.W.2d 688, 691–92 (Tex. Crim. App. 1988). "[A]ssent in fact" can be express or apparent. PENAL § 1.07(a)(11); *Baird v. State*, 398 S.W.3d 220, 229 (Tex. Crim. App. 2013).

Appellant argues that there is no evidence showing that he unlawfully appropriated Brian's cell phone with the intent to deprive him of it. Although Appellant admits that he took the phone, he contends that the taking was inadvertent.

He claims that proof he did not intend to deprive Brian of the cell phone is found in the following facts: he mistakenly thought people were chasing him; Brian allowed him to stand up and opened the door for him to leave; he surrendered to the police shortly after he ran from Brian's home (before he was able to return the cell phone); and he did not steal any other property. We disagree.

Appellant forcefully entered Brian's home. Brian testified that he did not give Appellant consent to enter, so he restrained Appellant. Then, after Appellant asked to "make a call," Brittany gave Appellant Brian's cell phone, and Brian allowed Appellant to make the call. However, Appellant did not just make a phone call: he fled with Brian's cell phone. Brian testified that neither he nor anyone in his family authorized Appellant to take his cell phone.

From this evidence, the jury could have concluded that Appellant took Brian's cell phone without Brian's effective consent. *See Mueshler v. State*, 178 S.W.3d 151, 156 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *see also Northup v. State*, No. 13-07-00581-CR, 2009 WL 1623426, at *6 (Tex. App.—Corpus Christi June 11, 2009, pet. ref'd) (mem. op., not designated for publication). Lack of effective consent may be shown by circumstantial evidence. *Wells v. State*, 608 S.W.2d 200 (Tex. Crim. App. [Panel Op.] 1980). Although Brittany and/or Brian gave Appellant consent to use the cell phone for a phone call, they did not give Appellant consent to take the cell phone off the property. And while no one expressly told Appellant any specific restrictions on his use of the cell phone, the circumstances are such that a jury could have inferred that Appellant knew he was only allowed to use the cell phone for a limited purpose. His behavior, most notably his flight from the residence, is consistent with someone who knew they were not authorized to take the property. *See Mueshler*, 178 S.W.3d at 156. Therefore, a jury could have inferred that Appellant unlawfully appropriated Brian's cell phone.

The jury also could have inferred that Appellant intended to deprive Brian of his cell phone. *See Northup*, 2009 WL 1623426, at \*6. Appellant's intent to deprive may be inferred from his words, acts, and conduct. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999)). The fact that Appellant did not return the cell phone after he took it is evidence from which a jury could have inferred Appellant's intent to deprive. *See Rowland v. State*, 744 S.W.2d 610, 613 (Tex. Crim. App. 1988). Moreover, even though Appellant did not maintain possession of the cell phone, this does not mean that he did not intend to deprive Brian of the cell phone. *See Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981); *Banks v. State*, 471 S.W.2d 811, 812 (Tex. Crim. App. 1971). The jury could have inferred that, when Appellant fled with Brian's cell phone, he intended to keep the cell phone permanently but accidentally dropped it as he was breaking into the third home. *See* PENAL § 31.01(2) (defining "deprive"). Indeed, the jury could have inferred that Appellant intended to pick the cell phone back up but was interrupted by the arrival of the police. While the jury could have also believed that Appellant inadvertently took the cell phone, the jury did not believe that version of events, and we must defer to the jury's resolution of conflicting inferences. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Zuniga*, 551 S.W.3d at 733–34.

Viewing the evidence in the light most favorable to the verdict, a rational jury could have found beyond a reasonable doubt that Appellant committed theft. Therefore, we hold that there was sufficient evidence to support Appellant's conviction for burglary of a habitation. We overrule Appellant's first and second issues.

*`This Court's Ruling*

We affirm the judgment of the trial court.


KEITH STRETCHER

JUSTICE


May 16, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.